# CHARLESTON.

STATE *ex rel.* R. M. SMITH v. W. W. WERTZ, POLICE JUDGE, *et al.*

Submitted July 20, 1922.　　Decided October 3, 1922.

1. SABBATH—*Charter of City of Charleston Authorizes Passage of Ordinance Prohibiting Labor on Sabbath.*

   The charter of the City of Charleston empowering the common council of that city to pass ordinances for the purpose of protecting the health, property, lives, decency, morality, cleanliness and good order of the city and its inhabitants, authorizes the passage of an ordinance prohibiting work and labor on the Sabbath day. (p. 623.)

2. MUNICIPALITIES—*Ordinance Dealing with Subject with Which City Council is Authorized to Deal Not Void Because Penalty for Violation is Greater Than State Law Prescribes Where Municipality is Authorized to Prescribe Penalties for Violation of Its Ordinances.*

   An ordinance passed by a city council dealing with a subject with which it is authorized to deal by its charter, will not be held void because the penalty prescribed for violation

thereof is in excess of that prescribed by state law for the violation of a state statute creating a similar offense, where the common council of such municipality is authorized to prescribe such penalties for the violation of its ordinances as in the opinion of the council may be necessary to enforce obedience thereto.   (p. 626.)

3.  NECESSITY OR CHARITY—*Selling Soft Drinks Not a Violation of.*
    It cannot be said as matter of law that selling soft drinks and conducting a soft drink stand is either a work of necessity or charity.  (p. 627.)

(POFFENBARGER, PRESIDENT, and MILLER, JUDGE, dissenting).

In prohibition.

Relator here seeks a writ of prohibition to prevent the Police Judge of City of Charleston from trying him upon a warrant charging the violation of an ordinance forbidding work or labor on Sunday.

*Writ refused.*

*E. S. Bock,* for relator.
*Donald O. Blagg,* for respondent.

RITZ, JUDGE:

Relator by this proceeding seeks a writ of prohibition to prevent the respondent, the Police Judge of the City of Charleston, from trying him upon a warrant charging a violation of an ordinance forbidding work or labor on the Sabbath day, upon the ground, as contended by the relator, that the said ordinance is void.   He insists that the common council of the City of Charleston does not possess any authority under its charter to pass an ordinance prohibiting work or labor on Sunday; and, further, that even though it does possess such authority, the ordinance involved here is void because it prescribes penalties in excess of those prescribed by state law for the like offense.

The respondent insists that under the charter of the city the council has full authority to pass the ordinance under which the warrant of arrest was issued.   The provisions of said charter relied upon as granting such authority to the council are:   "Sec. 7.   The council of said city shall have,
91 W. Va.

and is hereby granted power—To promote the general welfare of the city, and to protect the persons and property of citizens therein; To preserve and protect the peace, order and safety and health of the city and its inhabitants; To prescribe and enforce ordinances and rules for the purpose of protecting the health, property, lives, decency, morality, cleanliness and good order of the city and its inhabitants, and to protect places of divine worship in and about the premises where held, and to punish violations of all ordinances, if the offense under and against the same shall also constitute offenses under the laws of the State of West Virginia or the common law; To carry into effect these enumerated powers and all other powers conferred upon said city expressly or by implication in this and other acts of the legislature, the council of said city shall have the power, in the manner herein prescribed, to adopt and enforce all needful orders, rules and ordinances not contrary to the laws and constitution of this state; and to prescribe, impose and enforce reasonable fines and penalties, including imprisonment in the city lock-up, jail or station house.''

It will be noted that these provisions confer no authority by words upon the council to pass any law regulating the observance of Sunday, but it is contended that the authority to pass ordinances to protect the health, property, lives, decency, morality, cleanliness and good order of the city does confer authority to pass an ordinance making it unlawful to work or labor on the Sabbath day. It is quite true that a municipal corporation derives its authority from the legislature, and can exercise no authority except that conferred upon it by its charter. Does a provision authorizing a city council to pass ordinances to protect and preserve the health, property, lives, decency, morality, cleanliness and good order of the city include within its terms authority to pass an ordinance prohibiting work or labor on the Sabbath day? The answer to this question necessitates an inquiry as to the basis for such legislation. If it rests upon an attempt to enforce observance of religious rites and ceremonies, then it does not fall within the terms of the authorization above

quoted, and in fact if this was the basis of such enactments they would likely be beyond the legislative competence entirely. But that is not the basis of Sunday observance laws at all. From the standpoint of the lawmaker they have no reference whatever to religious obligations or duties. There may have been a time when the observance of the Sabbath day was enforced by clerical edicts, and when it was observed because of the fear of ecclesiastical condemnation. These regulations now, however, find their foundation and basis in the uniform experience of mankind teaching that it is not only advisable but necessary for the moral, mental and physical preservation of the race that those engaged in labor should periodically cease therefrom; that there should be periodic times of rest and recreation. There is, perhaps, no economic principle upon which there has been over a long period of time such uniformity of opinion. Certainly, since the year 321 A. D., when the Emperor Constantine promulgated an edict requiring the cessation from labor on one day. out of every seven, there has been uniformity in the legislation of all civilized nations upon this particular question, and we are unacquainted with anything in modern life which is contrary to the judgment of the philosophers and scientists, based, not only upon the facts of history, but upon scientific experimentation as well. We are, therefore, of opinion that the authority conferred upon the common council of the City of Charleston to pass ordinances to protect the morals of the citizens of the city confers authority to pass a Sunday closing ordinance. We find no dissent from this view among the courts of the country, but do find much authority consonant therewith. In the case of *Theisen* v. *McDavid*, 34 Fla. 440, 26 L. R. A. 234, it was held that a city council had authority to pass an ordinance forbidding work on the Sabbath day under a provision in its charter conferring upon it authority to pass such ordinances and laws as may be expedient and necessary for the preservation of the public peace and morals, the holding being that such an ordinance was promotive of the morals of the citizens of the community. So in the case of *City of St. Louis* v.

*Cafferata,* 24 Mo. 94, a charter provision authorizing the city of St. Louis to make rules, regulations, by-laws and ordinances for the purpose of maintaining the peace, good government and order of the city, etc., was held to confer authority upon the city council to pass a Sunday closing ordinance, it being the opinion of that court that no city could be said to be well governed where this great moral principle was not recognized. Another instructive case is that of *City of Clinton* v. *Wilson,* 257 Ill. 580, in which it was held that charter provisions authorizing the council to regulate the police of the city, and pass and enforce all police ordinances, conferred power upon the municipal council to pass an ordinance regulating work and labor on the Sabbath day. In *State* v. *Freeman,* 38 N. H. 426, it was held that a charter provision authorizing the city to make any by-laws, regulations and ordinances which may be necessary for the well-being of the city, authorized the passage of a Sunday closing ordinance. Other pertinent authorities are *Schumacker* v. *Little Falls,* 92 N. J. L. 106, 108 Atl. 113; *Detamore* v. *Hindley,* 83 Wash. 322; *Power* v. *Mordstrom,* 150 Minn. 228; *State* v. *Weiss,* 97 Minn. 125; *Hiller* v. *State,* 124 Md. 385; *Sherman* v. *Paterson,* 82 N. J. L. 345; *State* v. *Burbage,* 172 N. C. 876; *Ex Parte Johnson* (Okla.), 201 Pac. 533; *City of Corvallis* v. *Carlisle,* 10 Ore. 139; *Jones* v. *The City of Richmond,* 18 Gratt. 517. See also II Dillon Municipal Corporations, § 719; 28 Cyc. 743; and 25 R. C. L., title "Sundays and Holidays" § 9. We are well satisfied that the ordinance is not void for lack of authority in the city council to pass the same.

The relator relies upon our cases of *Judy* v. *Lashley,* 50 W. Va. 628, and *State Ex Rel. Morley* v. *Godfrey, Mayor,* 54 W. Va. 54, to support his contention. In the former case it was held that a city ordinance prohibiting the carrying of a pistol was void for lack of authority upon the part of the city council to pass it; and in the latter case a like holding was made in reference to the operation of a gaming table. The municipal corporations involved in those cases were incorporated under ch. 47 of the Code, and the only provision contained in that chapter at that time upon which the ordi-

nances attacked could rest was one authorizing the councils
of cities, towns and villages to protect the persons and prop-
erty of the citizens, and to preserve peace and good order
therein.    There was no such broad grant of the police power
as exists in the case of the charter of the City of Charleston.
It was held that the carrying of a pistol, which is usually
done concealed, was not violative of the public peace or good
order; nor was the conducting of a gaming table, which is
usually carried on secretly.    If there had been a grant to
the municipal corporations in those cases in such terms as
to include practically the entire scope of the States police
power, the holdings would no doubt have been entirely dif-
ferent.    Those cases distinctly hold that the legislature could
grant the power to the municipality, but that it had not
done so.    In this case the grant of power is almost, if not
quite as broad as the police power of the State.

Nor do we think there is any merit in the contention that
the ordinance is void upon the ground that the penalty pre-
scribed for its violation is different from that prescribed for
the violation of a state law covering the same subject.    It
is quite true that municipal corporations organized under
chapter 47 of the Code may not prescribe a more severe
penalty for their violation than is prescribed by state law
for the violation of state statutes covering the same subject,
but the City of Charleston has a special charter and the legis-
lature has put no such limitation as that in its charter.    That
limitation is placed in chapter 47 in express terms.    In the
charter of the City of Charleston the council is given authority,
not only to pass the ordinance, but to prescribe such reason-
able penalties as the council may deem necessary to compel
obedience to its terms.    There is no contention here that the
penalty prescribed is not reasonable.

The charge made against the relator is that he sold soft
drinks and conducted a soft drink stand on the Sabbath day.
If we could say as matter of law that this act with which
he is charged did not constitute a violation of the ordinance,
of course, the writ of prohibition would issue, but we cannot
say as matter of law that selling soft drinks and conducting

a soft drink stand is not a violation of the ordinance. 25 R. C. L., title "Sundays and Holidays" § 12; *McAfee* v. *Commonwealth,* 173 Ky. 83, 190 S. W. 671, L. R. A. 917 C 377 and note. There may be circumstances under which that sort of a business would not fall within the inhibition of the ordinance. The reasonable requirements of modern life make necessary the doing of some things on Sunday which in former times were considered not at all necessary. The facts in each particular case, however, must control, and a reasonable and sensible construction given to the law so as to make it consistent with the basis upon which it rests, and that is the preservation and promotion of the physical, moral and mental welfare of the people.

It results from what we have said that the writ of prohibition prayed for will be refused.

*Writ refused.*

POFFENBARGER, PRESIDENT, *dissenting:*

In their construction of the charter of the City of Charleston, as set forth in the opinion adopted by them, my associates have indulged in extreme liberality. Very general and indefinite language, applicable to numerous subjects specified, has been interpreted as having vested in the City jurisdiction respecting one not named, nor in any sense expressly indicated, namely, Sunday observance. That is a primary subject of which many other things are attributes and incidents. The bases of the policy involved and enforced in Sunday observance are well and clearly stated in the opinion. Some of them just as clearly underlie many other State and Municipal regulations of civic conduct. There are a great many regulations that promote health and that were designed for its promotion. A dignified and elevating form of social life is one of the results of religious worship and of Sunday observance. No doubt maintenance and promotion thereof is as clearly within the purpose of Sunday observance as the promotion of health, and prevention of retrogression of mental and physical power. Cleanliness is just as readily and clearly brought within the purpose. Health, strength,

cleanliness and the creation and pursuit of high ideals in in-
dividual and social life are directly promotive of morality
and good order. But all of these are mere objectives, at-
tributes and incidents of the primary subject of legislation,
which is not mentioned at all. 'It is a measure of State
policy, not in any sense local, wherefore it has always been
uniform in its requirements and administration. The City
of Charleston, by the passage and enforcement of the ordi-
nance in question, adopts a State law and, in the adminis-
tration thereof, interprets and applies it, as if it were one
of its own measures devised for effectuation of the one of the
powers of local government specifically delegated to it.

Specific authority is conferred by section 7 of the charter
for adoption of measures for protection and promotion of
health, morality, cleanliness, good order and the general
welfare. To enumerate or even indicate all of them would
require undue space, time and labor. They are such as are
generally conferred upon cities and towns, enlarged by spe-
cific additions. They confer powers and directly and indi-
rectly define them. The scope of Municipal powers so con-
ferred, though broad, falls far short of the powers of the
legislature. In my opinion, the language importing grants
of general powers to promote the general welfare, preserve
and protect the peace, order, safety and health of the City
and its inhabitants, and prescribe and enforce ordinances
and rules for the purpose of protecting the health, property,
lives, decency, morality, cleanlinessness and good order of
the City and its inhabitants, must be limited to the scope
of Municipal authority indicated by the powers expressly
conferred and such as are impliedly included in those ex-
pressly given. In other words, the general terms were added
to put it beyond doubt that powers included in those ex-
pressly mentioned, by necessary, reasonable or fair implica-
tion, might be exercised. As some of the specific authoriza-
tions contain terms importing prescription of definite and
exclusive methods of exercise of powers plainly given, it
may have been deemed necessary to negative legislative in-
tent to impose undue restraint upon the Municipal authori-

ties, as to the manner in which they should exercise clearly granted powers. These general grants of power were no doubt intended also to make it clear that none of the powers usually and ordinarily conferred upon Municipal corporations had been withheld by omission thereof from the enumeration of powers expressly granted. Certain classes of powers have been uniformly and always conferred upon such corporations by legislative grant, and have become as characteristic of them as if they were inherent powers. They are of such number and variety that it is difficult to name all of them in a charter. Hence, the use of these general grants in nearly all charters. Under the rules of interpretation, I am unable to concur in the conclusion that the clauses purporting to grant general powers express legislative intent to confer jurisdiction and power over a subject of such peculiar character as Sunday observance. The charter language relied upon touches only things involved in it or related to it in some way. Not a word concerning Sunday or observance thereof can be found in the charter. Almost everything bears some sort of relation to every other thing. Mention of one thing bearing some kind of relation to another falls very far short of mention or inclusion of the latter. As I have said, Sunday observance is a distinct measure of public policy, in itself. In its train, it carries many subordinate elements, ingredients or attendants. To make the charter confer jurisdiction over it by mere inclusion of some of them is an unsound method of interpretation, although I must admit that several courts have sanctioned it in the construction of Municipal charters, with reference to this subject. In my opinion, those decisions rest upon sentiment more than sound legal interpretation.

Having found the reasonable and wholesome functions for these general clauses, I have mentioned, it is not necessary, under the rules of interpretation, to accord them any further weight or effect. Nor, in my opinion, is it permissible to do so. Legislative delegations of power are strictly construed in the sense that intent to make them must be clearly disclosed. All serious doubts are to be resolved against them.

*State ex rel. Dillon* v. *County Court,* 60 W. Va. 339. Grants of power to Municipal corporations constitute no exception to this rule. *Judy* v. *Lashley,* 50 W. Va. 628; *Bluefield Water Works and Improvement Co.* v. *City of Bluefield,* 69 W. Va. 1; Tiedman on Lim. of Police Power, sec. 212; Dillon on Municipal Corporations, 4th Ed., sec. 367; *Savannah* v. *Hussey,* 21 Ga. 86.

Being of the opinion that the ordinance in question is void, I would award the writ, upon the authority of *Judy* v. *Lashley,* 50 W. Va. 628, and *State ex rel. Morley* v. *Godfrey,* 54 W. Va. 54, applying the remedy invoked, in such cases as this.

My conclusion, if carried into effect, would not leave the City, its inhabitants or any of its institutions unprotected from the results of Sabbath desecration. To the full extent of its meaning and effect, the State law governing the subject is in operation and, presumptively, is adequate. We have our justices to hear complaints, issue warrants and make commitments or take bail, our grand juries to indict and a force of officers to prosecute.

Judge MILLER concurs in the views and conclusion here expressed.