STATE *ex rel.* HECK'S DISCOUNT CENTERS., INC., *et al.*

*v.*

E. E. WINTERS, *Judge, etc., et al.*

(No. 12255)

Submitted July 30, 1963.     Decided September 10, 1963.

*Stanley E. Preiser, W. Dale Greene, Preiser, Weaver & Daugherty,* for relators.

*Edward V. Lee,* for respondents.

*H. D. Rollins,* amicus curiae for William Hamaday and *J. Fleet Green,* as members of W. Va. Retail Grocers, and W. Va. Assn. of Retail Grocers, unincorporated associations.

*Dayton, Campbell & Love, Charles M. Love, Charles R. McElwee, Harry V. Campbell,* amicus curiae for W. Va. Retailers Assn. of Charleston, W. Va.

CALHOUN, JUDGE:

By this original proceeding in prohibition, the relators, Heck's Discount Centers, Inc., a corporation, and Pic-Way Shoes of West Virginia, a corporation, seek to prohibit the respondents, Honorable Ernest E. Winters, judge of the Court of Common Pleas of Cabell County, and Honorable

Russell Dunbar, prosecuting attorney of that county, from proceeding to trial on certain indictments pending against the relators.

The basic question presented to this Court for decision is the constitutionality of Chapter 37, Acts of the Legislature, Regular Session, 1963, by which the legislature undertook to repeal Code, 1931, 61-8-17 and 18, as amended, and to enact in lieu thereof certain new provisions. The purpose of the new act was to amend and reenact the statutes of this state which inhibit certain acts and activities "on a Sabbath day". The amendatory act inhibits certain acts and activities "on the first day of the week, commonly known and designated as Sunday," and provides for more severe punishment.

The primary ground urged in support of the contention of unconstitutionality is the assertion that the amendatory act was passed after the legislative session had terminated by operation of law.

Shortly after the effective date of the 1963 act, Heck's Discount Centers, Inc., was charged in an indictment with having employed a certain person, described by name, to perform certain labor on a designated Sunday and by a separate indictment the same defendant was similarly indicted for thus having employed another person described by name. On the same date on which the two indictments were returned against Heck's Discount Centers, Inc., the same grand jury returned a similar indictment against Pic-Way Shoes of West Virginia, Inc. Promptly thereafter the relators, defendants in the indictments, appeared by counsel before the Court of Common Pleas of Cabell County, in which the indictments had been returned and were pending, and thereupon moved the court to quash and to dismiss the indictments on the ground of the alleged unconstitutionality of the 1963 act. The motions were overruled and the matters charged in the three indictments were set for trial on July 9, 1963. The prohibition proceeding was thereupon instituted in this Court.

We have considered the procedural question involving the propriety of the joining in this single prohibition pro-

ceeding of the cases arising upon the three indictments, involving two separate defendants and three separate alleged offenses. No objection has been raised by the respondents to the procedure in this respect, and, believing that no prejudice can result therefrom to any party in interest, the question of procedure will be treated as having been waived.

Code, 53-1-1, provides that the writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, "when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." In *Cosner* v. *See*, 129 W. Va. 722, 42 S. E. 2d 31, the constitutionality of a statute was challenged in an original proceeding in prohibition. The Court determined the constitutionality of the statute and also held in the fifth point of the syllabus that it was proper to entertain the proceeding and to issue the writ of prohibition "in advance of the trial and without requiring the accused to await the rendition of an adverse final judgment to seek relief from such judgment by writ of error." The Court holds, therefore, that prohibition is a proper proceeding in this case and at this stage thereof to determine whether the trial court is undertaking to proceed to try the relators on criminal charges under a statute which is void and a nullity because the legislature was not constitutionally in session when it undertook to enact such statute.

Constitution, Article VI, Section 18, provides in part: "Regular sessions of the Legislature shall commence on the second Wednesday of January of each year * * *." Accordingly, the legislature convened on January 9, 1963, for the regular session.

A portion of Article VI, Section 22 of the Constitution is as follows: "The regular session of the Legislature * * * shall not exceed sixty days, * * *. All regular sessions may be extended by the concurrence of two-thirds of the members elected to each house." A joint resolution for extension of the session, pursuant to that provision, was proposed but failed to pass.

A portion of Article VI, Section 51, Sub-Section D of the Constitution is as follows: "If the 'Budget Bill' shall not

have been finally acted upon by the Legislature three days before the expiration of its regular session, the governor may, and it shall be his duty to issue a proclamation extending the session for such further period as may, in his judgment, be necessary for the passage of such bill; but no other matter than such bill shall be considered during such extended session except a provision for the cost thereof." The governor extended the session for three days for budgetary purposes.

In the light of the constitutional provisions referred to above, the legislature had no constitutional right, power or authority to pass, and was inhibited by the Constitution from passing any law after midnight of the sixtieth day of its session, except enactments relating to the budget.

By permission of the Court, counsel for two individual members of the West Virginia Retail Grocers and the West Virginia Association of Retail Grocers, both unincorporated associations, filed a brief as *amici curiae* which supports the relators' contention that the amendatory act is unconstitutional, but only on the asserted ground that it was passed after the sixty-day session of the legislature had ended by operation of law. By similar permission of the Court, counsel for West Virginia Retailers Association filed a brief as *amicus curiae* by which it asserts that the 1963 act is not unconstitutional on any of the grounds asserted by the relators. These briefs have been helpful to the Court in its efforts to resolve correctly the questions presented for decision.

In its brief, West Virginia Retailers Association contends that, in computing the permissible length of the sixty-day session, we are required to exclude the first day thereof and that, therefore, the legislature was authorized to continue in regular session beyond midnight of Saturday, March 9, and at least through Sunday, March 10. Primary reliance for that contention is placed on Code, 1931, 2-2-3, which provides that the "time within which an act is to be done shall be computed by excluding the first day and including the last; or if the last be Sunday, it shall also be excluded." If we were to adopt and literally apply this contention, the

result would be that it was permissible for the regular session to have continued through Monday, March 11. This would be contrary to that which we believe to have been the accepted practice and interpretation of the Constitution uniformly adhered to through the past years of the state's history. We believe that the statute relied upon in this connection is not applicable. We are not concerned in this case with a determination of the "time within which an act is to be done." On the contrary, we are concerned with the permissible duration of the regular sixty-day legislative session. The Constitution which provides for the creation of the regular session also places a limitation on the length thereof. That is to say, Constitution, Article VI, Section 22, declares in unmistakable language that a regular session "shall not exceed sixty days." That clear provision of the organic law is the one directly applicable, the one we are constrained to follow, and it offers no semblance of an authorization of a continuance of the regular session beyond sixty days. It makes no provision for the exclusion of a Sunday or of any other day in the application of its clear provisions. We hold, therefore, that the regular 1963 session of the legislature could not constitutionally continue beyond midnight on Saturday, March 9, in the absence of an extension thereof "by the concurrence of two-thirds of the members elected to each house," in conformity with the provisions of Article VI, Section 22 of the Constitution.

It is common knowledge that over a period of years the legislature has undertaken from time to time to circumvent the constitutional provision which limits the length of a regular session, and that on occasions it has undertaken to prolong its sessions by the mere expedient of stopping the clock. In *Capito v. Topping*, 65 W. Va. 587, 593, 64 S. E. 845, 847, the Court referred to the "common practice of staying the hands of the clock to enable the Legislature to effect an adjournment apparently within the time fixed by the Constitution for the expiration of the term * * *."

Doubtless it is a fact that the legislature of this state is not unique in having indulged in that practice. It is a fact, nevertheless, that when a regular legislative session ends

by operation of law by reason of the expiration of the period fixed by the Constitution for its duration, the legislature becomes *functus officio* and ceases to have the legislative power accorded to it while in lawful, constitutional session.

This Court heretofore has been called upon to wrestle with the problem, on the one hand, of according full force to the presumption of the verity of legislative bills duly enrolled, authenticated and approved; and, on the other hand, of requiring obedience on the part of the legislature to the clear mandate of the Constitution. In its efforts to strike a proper balance in relation to these two considerations, the Court has heretofore formulated certain legal principles for our guidance.

In the seventh point of the syllabus of *Capito* v. *Topping*, 65 W. Va. 587, 64 S. E. 845, the Court stated: "When the records of the legislature show the time of adjournment and are clear and unambiguous, respecting the same, they are conclusive; and extraneous evidence cannot be admitted to show a different date of adjournment." In the body of the opinion (65 W. Va. at 593, 64 S. E. at 847), the Court stated: "If the legislature has failed to make any record of its adjournment, or its records are in such a state of confusion as to render ascertainment of the date impossible, then resort may be had to other evidence, but not otherwise."

The seventh point of the syllabus of *Capito* v. *Topping*, *supra*, was applied and adopted as the first point of the syllabus of *State ex rel. Armbrecht* v. *Thornburg*, 137 W. Va. 60, 70 S. E. 2d 73. In the *Armbrecht* case, the Court made an exhaustive review of prior decisions of this Court and of appellate courts of other jurisdictions, and stated in the body of the opinion (137 W. Va. at 67, 70 S. E. 2d 77): "From these decisions it clearly appears, we believe, that this Court early adopted, and has continuously followed, a rule permitting the Court, in determining whether the Legislature has complied with the constitutional requirements in the consideration or passage of a bill, to look to the journals and to other official records and, in the event of patent ambiguity in such records, hear and determine the question of constitutionality of the act by aid of extrinsic evidence."

In the *Armbrecht* case, the Senate journal disclosed that a member of that body had stated that a certain bill was "considered" at approximately twenty minutes after seven o'clock on the morning of the day after the session had ended by operation of law. The Court held that no ambiguity was thereby made to appear on the face of the journal because the senator merely stated that the bill was "considered", rather than voted upon and enacted. In that connection the Court stated:

> "While this Court must accord to the Legislature, a coordinate branch of the government, every constitutional power or right possessed by it, the fact must not be overlooked that this Court is charged with the solemn duty of determining what acts of the Legislature are constitutional, and what acts have been passed by the Legislature in conformity with the demands of the Constitution, when such questions are properly presented to the Court. The mere stopping of a clock does not stop the passing of time. The sixty day provision of the Constitution does not prevent the Legislature by 'a concurrence of two-thirds of the members elected to each house', from extending a session beyond sixty days, if necessity therefor exists. The method so provided for an extension of the session by the Constitution appears ample but, if not ample, we are not warranted in avoiding the direct and certain command of the Constitution by any sort of subterfuge, and we do not hesitate to say this Court, at least as now constituted, would adjudge any legislation invalid if it be established by a proper showing to have been enacted beyond the sixty day period, where no constitutional extension is shown to have been authorized."

In *State* v. *Heston*, 137 W. Va. 375, 71 S. E. 2d 481, the Court quoted with approval the language quoted above from the opinion in the *Armbrecht* case, carefully reviewed pertinent precedents and held in the third point of the syllabus: "A bill duly enrolled, authenticated, and approved is presumed to have been passed by the Legislature in conformity with the requirements of the Constitution, unless the contrary affirmatively appears from the journal of either house or other legislative records; and the failure of the

Legislature to comply with constitutional requirements in its enactment, which can be considered only when disclosed by ambiguity, omission or conflict in such journal or other legislative records, must be clearly and convincingly established to overcome such presumption." That case is authority for the proposition that extrinsic evidence may be considered in a case such as this to prove that the legislature failed to comply with constitutional requirements in case of ambiguity, omission or conflict in the legislative journal.

From prior decisions of this Court it appears that a bill duly enrolled, authenticated and approved is presumed to be correct but the courts may look to the journals of the legislature and to other official records to determine whether such an act was passed in accordance with constitutional requirements. If the legislative journals of either house of the legislature disclose on their face an omission, ambiguity or conflict in relation to the question of compliance with or failure to comply with constitutional requirements, resort may be had by a court to extrinsic evidence for the purpose of resolving such omission, ambiguity or conflict. In the application of these legal principles, the Court, in *State* v. *Heston,* 137 W. Va. 375, 393, 71 S. E. 2d 481, 491, stated:

> "*** There is nothing in any of the records of the regular session, 1951, of the Legislature which indicates that the time clock in either House was stopped or turned back before midnight of March 10, 1951, or that creates any ambiguity concerning that fact which would permit its establishment by extrinsic evidence. For these reasons that question cannot be determined by this Court in this proceeding. It should be said, however, that the device or the practice of stopping or turning back the legislative clock is emphatically disapproved. Such device or practice cannot in law stop the actual pasage of time or lawfully continue or prolong a regular session of the Legislature beyond the end of the sixty day limit imposed by Article VI, Section 22, of the Constitution of this State. Any legislative action taken, after the expiration by the actual passage of time at midnight of the sixtieth day of an unextended regular session, under the device or the practice of stopping or turning back the legislative clock, or other like device or prac-

tice, is forbidden by the Constitution of this State, is unconstitutional, null and void, and, in a proper proceeding in which it is shown by competent evidence that any such action has been taken, will be necessarily and unhestitatingly so held and declared by this Court."

We believe that we are warranted in the assertion that, by brief and oral argument, counsel for the proponents of the constitutionality of the amendatory act admit tacitly, though not expressly, that such act was passed after the session was terminated by operation of law. In their petition, the relators specifically allege that the act was voted upon and passed after midnight on the night of March 9-10. In their answer the respondents make no denial of such allegation except by reliance upon the legislative journal of March 9. The entire case in behalf of the respondents on this question of constitutionality is based on reliance upon the legislative journal.

With the prohibition petition there was filed as an exhibit and made a part of the petition an affidavit by Honorable C. A. Blankenship, Clerk of the House of Delegates. In that affidavit he stated that on the evening of March 9, 1963, "he was directed by the Speaker of the House of Delegates, the Honorable Julius W. Singleton, Jr., to stop the clock, this being the official clock of the House of Delegates," and that the act in question "was passed when the official clock was stopped at 11:28 P. M., but the actual time was 12:15 or 12:18 A. M., March 10, 1963." The allegation of the petition that the official clock was stopped has not been denied or contradicted by answer, affidavit or otherwise.

In both the *Armbrecht* case and the *Heston* case, the legislative journals indicated, in clear, unambiguous language, that adjournment occurred on a date when the legislature was constitutionally authorized to be in session. No ambiguity in that respect appeared. On the contrary, the journal of the House of Delegates for March 9, 1963, does not contain a clear, unequivocal or unambiguous declaration or pronouncement of the date and hour of adjournment. The language employed in the journal of the house for that day is as follows: *"Stating that according to the clock in*

872

*the House Chamber it was now 11:58 P. M.,* Mr. Brotherton moved that the House of Delegates adjourn until 12:00 noon, Monday, March 11, 1963." (Emphasis supplied.) This language is contrasted with the following unequivocal, unambiguous declaration contained in the House journal for Monday, March 11, 1963: "At 6:55 P. M., on motion of Mr. Brotherton, the House of Delegates adjourned *sine die.*" We believe, therefore, that the House journal for Saturday, March 9, 1963, omitted to disclose an affirmative declaration in clear, unambiguous language, that the adjournment was within the sixty-day period prescribed by the Constitution.

Courts of this state may take judicial notice of the journals of either house of the legislature. *State v. Heston,* 137 W. Va. 375, pt. 1 syl., 71 S. E. 2d 481. From the journal of the House of Delegates for March 9, 1963, the sixtieth day of the session, it is fairly obvious that various members of that body, who opposed the enactment involved in this case, proceeded by concert of action to cause the journal of that day's proceedings to demonstrate, in conformity with prior pronouncements by this Court, that the act here in question was considered for passage and voted upon after midnight of the night of March 9-10.

The bill here in question is described in the journal as "Eng. Com. Sub. for Senate Bill No. 125." At page 162 of the House journal appears the following remark by Delegate J. S. Barker: "The clock was stopped at eleven thirty and I want that in the record." As disclosed by the journal at the same page, Mr. Barker stated: "I voted against this bill at twelve seventeen according to my watch and I checked the time, Eastern Standard time, before I voted."

According to the journal at page 161, Delegate Simonton stated: "This carnival trick of stopping the clock, now showing eleven thirty, and by every other member's watch in this House right now it is at least fifteen after, is something that I, as a citizen, just simply cannot swallow."

The following remarks of Delegate Cann appear at page 163 of the journal: "Mr. Speaker, the clock in the House chamber now shows eleven-thirty. That clock has so shown

that time for one hour and five minutes. At the time that I rose in opposition to Eng. Com. Sub. for Senate Bill No. 125, that bill had not been voted on at that time by the House of Delegates of the West Virginia Legislature. I announced that it was twelve minutes after twelve."

According to the journal at page 163, Delegate Bailey stated: "Mr. Speaker, I would like to explain my vote on Eng. Com. Sub. for Senate Bill No. 125 at twelve-fifteen on March 10, 1963, the clock on the wall showing eleven-thirty."

As disclosed by page 170 of the House Journal, Delegate Auvil stated: "Mr. Speaker, I believe that by passing Eng. Com. Sub. for Senate Bill 125, the Sunday Blue Law, fifteen minutes after the hour of twelve, Sunday morning, March 10, 1963, that we have mocked the legislative process."

The following remark by Delegate Gentile appears at page 173 of the House Journal: "I voted for the bill. The time on my watch was 12:15 A. M., March 10, 1963."

The following appears at page 158 of the House journal: "Mr. Kidd stated that according to his watch it was now 12:05 A. M., Sunday, March 10, 1963, and inquired of the Speaker as to the correct time. The Speaker stated that according to the clock in the House Chamber it was now 11:28 P. M., Saturday, March 9, 1963." At page 159 of the House journal, the following appears in relation to the bill involved in this case:

"Mr. White then moved that the report of the Committee of Conference be adopted.

"Mr. Simonton raised the point of order that it was now after 12:00 midnight, March 9, 1963, and for this reason the House could not constitutionally further consider the legislation.

"Which point of order was overruled by the Presiding Officer."

According to page 177 of the House journal, Delegate Slonaker stated that "action was taken" on the bill in question and others after midnight.

The following appears on pages 178 and 179 of the House journal:

"Mr. Nuzum explained his vote on Eng. Com. Sub. for S. B. No. 125, and while occupying the floor, asked certain members to yield for questions.

"Concluding his explanation and questioning Mr. Nuzum requested that his explanation and questions and answers be incorporated in the Journal.

"The Speaker stated that under the rules the gentleman was entitled to have his explanation included in the Journal, and that the answers to his questions could be included with the consent of the members giving the answers.

"The gentleman answering the questions joined in the request.

"The explanation, questions and answers were as follows:

"Mr. Nuzum. Mr. Speaker, I would like to explain my vote on Eng. Com. Sub. for S. B. No. 125.

"I call your attention to Section 22, Article VI of the Constitution, dealing with length of legislative sessions.

"The gentleman from Hampshire has made the point, but I call attention to the provision of this section providing that 'All regular sessions may be extended by the concurrence of two thirds of the members elected to each House.'

"Now, Mr. Speaker, would the gentleman from Marion yield for a question?

"The Speaker. The gentleman from Marion indicates he will yield.

"Mr. Nuzum. Mr. Watson, do you have a watch?

"Mr. Watson. Yes, sir.

"Mr. Nuzum. What time does your watch show?

"Mr. Watson. I've got nine after one.

"Mr. Nuzum. Would the gentleman from Wood yield?

"Mr. Nuzum. Mr. Simonton, do you have a watch?

"Mr. Simonton: Yes, sir.

"Mr. Nuzum. What time does your watch show?

"Mr. Simonton. My watch shows six after one.

"Mr. Nuzum. Will the gentleman from Gilmer yield?

"Mr. Kidd. Yes, sir.

"Mr. Nuzum. What time does your watch show?

"Mr. Kidd. Eleven minutes after.

"Mr. Nuzum: Will the gentleman from Mingo yield?

"Mr. Nuzum: What time does your watch show?

"Mr. Gentile. Eleven after one.

"Mr. Nuzum. Will the gentleman from Fayette (Mr. Myles) yield?

"Mr. Nuzum. Mr. Myles, do you have a watch?

"Mr. Myles. Yes, Sir.

"Mr. Nuzum. What time does your watch say?

"Mr. Myles. I can't see it but the clock on the wall says four minutes till twelve on March 9, 1963.

"Mr. Nuzum. You can't see your watch?

"Mr. Myles. No, sir. It's covered up with my shirt sleeve."

From the journal of the House of Delegates for March 9, 1963, it appears affirmatively and without contradiction that the official clock was stopped at approximately 11:28 p. m., and that it remained stopped for a considerable period of time. It likewise appears affirmatively and without substantial contradiction that the bill in question was voted upon after the hour of midnight and at approximately 12:15 or 12:18 a. m., on Sunday, March 10, 1963. Perhaps the only portion of the House journal for March 9, 1963, which tends to disclose that the bill was voted upon before midnight is the following which appears at page 173: "Mr. Myles. Mr. Speaker, I wish to explain my vote on Eng. Com. Sub. for S. B. No. 125, which was passed Saturday

876

night, March 9, 1963, at approximately 11:29 P.M." In that connection we bear in mind that it appears from the journal that the official clock was stopped at approximately 11:29 p.m., and that Mr. Myles is the same member of the House who stated that he could not see his watch because it was covered by his shirt sleeve.

Considering, as a whole, the journal of the House of Delegates for March 9, 1963, certainly it is an understatement to assert that it fails to disclose without omission, ambiguity or conflict that the bill in question was voted upon before midnight on the night of March 9-10, 1963.

In addition to the affidavit of the Clerk of the House of Delegates referred to previously, two other affidavits were filed as exhibits with and made a part of the prohibition petition. One of these, by Honorable C. Donald Robertson, Attorney General of the State of West Virginia, stated that on the evening of March 9, 1963, he was present in the chamber of the House of Delegates. That fact appears from the journal itself. The affidavit states further that the official clock was "stopped at 11:28 p. m." that the bill in question was "taken up and considered for passage" at 12:05 a. m., March 10, 1963; and that, following debate, the bill "was passed at approximately 12:18 A. M. on March 10, 1963." A similar affidavit by Ivor F. Boiarsky, a member of the House of Delegates from Kanawha County, was filed with and made a part of the prohibition petition. It states that the official clock was stopped at 11:28 p. m., and that the bill in question "was not voted upon by any member of the 1963 House of Delegates with regard to its passage, until March 10, 1963."

Considering the journal of the House of Delegates for March 9, 1963, in its entirety, the undenied allegations of the prohibition petition and the three affidavits filed as exhibits with and made a part of the petition, the Court holds that it clearly appears that the bill in question was not voted upon on the question of its passage or enactment until the early morning of Sunday, March 10, 1963, when the 1963 regular session had ceased and terminated by passage of time and by operation of law; and that, therefore, Chap-

ter 37, Acts of the Legislature, Regular Session, 1963, is unconstitutional, void and a nullity.

Being utterly void and a nullity, the purported enactment in question could not have the effect of repealing any preexisting statute or statutes. An annotation appearing in 102 A.L.R. 803 is summarized as follows: "Ordinarily, where one statute specifically repeals another and attempts, unconstitutionally, to provide a substitute, the provision of repeal will fall with the act of which it is a part." A similar statement appears in 82 C.J.S., Statutes, Section 281, page 473, as follows: "A statute which is invalid or unconstitutional and void will not operate to repeal another valid statute." See also 50 Am. Jur., Statutes, Section 521, page 529; 11 Am. Jur., Constitutional Law, Section 148, page 827.

It is true that a statute enacted by a duly constituted legislature, in lawful, constitutional session, may contain both constitutional and unconstitutional provisions which are distinct and separable so that some may stand while others must fall. *State* v. *Heston,* 137 W. Va. 375, pt. 6 syl., 71 S. E. 2d 481; *State ex rel. The County Court of Cabell County* v. *Battle,* 147 W. Va. 841, pt. 5 syl., 131 S. E. 2d 730. But an obvious prerequisite to repeal of a prior statute, either by express language or by implication, is a subsequent statute enacted by a legislature which does not lack constitutional power and authority to make any enactment whatsoever on the subject.

The relators have attacked the constitutionality of Chapter 37, Acts of the Legislature, Regular Session, 1963, on various other grounds. Since the Court holds that the purported enactment is unconstitutional, void and a nullity for reasons previously stated, it is unnecessary to consider the other bases of unconstitutionality asserted by the relators. In passing, however, we observe that at least some of the additional grounds of unconstitutionality urged by the relators have in other situations of a similar nature been held to be untenable. *McGowan* v. *Maryland,* 366 U. S. 420, 81 S. Ct. 1101, 6 L. ed. 2d 393; *Gallagher* v. *Crown Kosher Super Market,* 366 U. S. 617, 81 S. Ct. 1122, 6 L. ed. 2d 536; *Two Guys from Harrison-Allentown* v. *McGinley,* 366 U. S. 582,

81 S. Ct. 1135, 6 L. ed. 2d 551; *Braunfeld* v. *Brown*, 366 U. S. 599, 81 S. Ct. 1144, 6 L. ed. 2d 563; *Mandell* v. *Haddon*, 202 Va. 979, 121 S. E. 2d 516. Some observations made by this Court in relation to statutes of a similar nature may be found in the following caes, though we do not mean to imply that they are determinative of the constitutional questions presented in the instant case: *Raines* v. *Watson*, 2 W. Va. 371; *State* v. *The B. & O. R. R. Co.*, 15 W. Va. 362; *State* v. *Railroad Co.*, 24 W. Va. 783; *State ex rel. Smith* v. *Wertz*, 91 W. Va. 622, 114 S. E. 242.

For reasons stated, a writ is awarded to prohibit the respondents from the further prosecution or trial of the pending indictments against the relators under the provisions of the challenged statute or any other statute relating to the subject matter of such indictments.

*Writit awarded.*