Sara **GOINES** and Bryan Campbell, Individually and on behalf of all residents of Preston County similarly situated, et al., Plaintiffs,

v.

John D. **ROCKEFELLER, IV,** Secretary of State of West Virginia, in his official capacity, Defendant.

Civ. A. No. 71–252–CH.

United States District Court,
S. D. West Virginia,
Charleston Division.

Jan. 28, 1972.

Paul J. Kaufman, John L. Boettner, Jr., Charleston, W. Va., for plaintiffs.

Chauncey H. Browning, Jr., Atty. Gen. of W. Va., and Victor A. Barone and Cletus B. Hanley, Asst. Attys. Gen., Charleston, W. Va., for defendant.

Before BOREMAN, Circuit Judge, and CHRISTIE and HALL, District Judges.

## OPINION AND ORDER

KENNETH K. HALL, District Judge:

In this action plaintiffs complain that House Bill No. 1, amending West Virginia Code, Sec. 1-2-2, passed by the West Virginia Legislature on November 4, 1971, and signed by the Governor of West Virginia on November 22, 1971, relating to apportioning the membership of the West Virginia Legislature's House of Delegates, is contrary to and violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. They reason that the apportionment by the Legislature offends the "one man—one vote" principle enunciated by the United States Supreme Court for State Legislatures in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and its refinements in later decisions. They ask that House Bill No. 1 be declared unconstitutional and void; that three provisions of the West Virginia Constitution [1] be declared invalid and void in their current application to legislative apportionment on the basis that the language of the state constitution is unavoidably in conflict with the requirements of the United States Constitution; [2] that injunctive relief be granted to restrain proceeding with the elections of members of the House of Delegates under any unconstitutional apportionment laws; and that the Court prescribe guidelines for the Legislature in its legislative apportionment enactment to conform to the requirements of the equal protection clause of the Fourteenth Amendment.

Plaintiffs also ask that this action be considered a class action under Rule 23, Federal Rules of Civil Procedure, for a declaration and protection of their own rights and the rights of all West Virginia citizens who are similarly underrepresented in the Legislature. They ask that the action be expedited and advanced on the Court's docket because of the urgency of election orderliness for the West Virginia primary and general elections of 1972.

Plaintiffs' complaint was filed on December 29, 1971; a District Court of three judges was promptly constituted; defendant's answer was filed on January 7, 1972; and the matters arising in this action were heard by the Court on January 17, 1972.

Defendant's answer asserts that plaintiffs are barred by the doctrine of laches from maintaining this action because of delays in presenting their case for the relief sought; and that the West Virginia Legislature, by Senate Concurrent Resolution No. 1, adopted November 4, 1971, is endeavoring to propose amendments to the West Virginia Constitution to eliminate any variances between the language of the State's Constitution and the equal protection requirements of the Fourteenth Amendment concerning apportionment of the membership of the West Virginia House of Delegates.

Defendant prays that the Court declare House Bill No. 1 valid and constitutional, or that the Court stay proceedings in this action until West Virginia can work out a solution to its legislative apportion-

---

1. West Virginia Constitution, Article VI, Sections 4, 6 and 7.

2. Section 4 of Article VI of the state constitution relates to apportionment of the State Senate, requiring senatorial districts to be "bounded by county lines." That section is not directly involved in this action and its constitutionality need not be considered here. The Court does not read in Section 7 any clear requirement that delegate districts be "bounded by county lines." Sections 6 and 7 relate to ascertainment and assignment of delegate representation in the House of Delegates from the several counties and delegate districts. Section 6 permits a county having at least three-fifths of the population representation ratio to have a delegate. Section 7 provides that "every delegate district and county not included in a delegate district" shall be entitled to at least one delegate. It further provides for the assignment of the additional delegates, not already assigned to counties and delegate districts having population representation ratios qualifying therefor, to delegate districts and counties "which would otherwise have the largest fractions unrepresented."

ment problems. Defendant's position is obviously based largely on problems incident to the conduct of orderly elections in the State during the current year.

Plaintiffs have elected to choose this forum for litigation of the issues herein involved and have cited constitutional and statutory authority for the Court's jurisdiction. Defendant has not questioned the jurisdiction of the Court. While similar legislative apportionment issues have been litigated in the state courts of West Virginia, Robertson v. Hatcher, 148 W.Va. 239, 135 S.E.2d 675 (1964), it appears that jurisdiction of this Court is well based and established. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed. 2d 821 (1963); Davis v. Mann, 377 U.S. 678, 690, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964); Wright, Law of Federal Courts, Sec. 14 (1970).

The parties stipulated the following facts:

*The parties, by counsel, stipulate and agree as follows:*

*Stipulation #1.* The West Virginia Legislature, within the limitations imposed by the West Virginia Constitution, Article 6, § 4, 6 and 7, cannot significantly improve upon the overall percentage deviation from population equality embodied in West Virginia Code 1–2–2 (H.B. 1) for purposes of representation in the West Virginia House of Delegates.

*Stipulation #2.* The official U. S. Census of Population for the year 1970, as in prior years, counted college students as part of the population of the area where they were living while attending college, as more particularly reflected in Joint Exhibit #1 which is attached hereto.

*Stipulation #3.* For the purposes of West Virginia Code 1–2–2 (H.B. 1), all college students were counted by the Legislature as being residents of their counties of origin without further inquiry as to whether or not they were registered voters or bona fide residents of the counties wherein their college or university was located.

*Stipulation #4.* West Virginia Code 1–2–2 (H.B. 1), when applied to the revised census figures described above, results in a 83% deviation from population equality and a 2.26 to 1 ratio (also known as the Maximum Under Representation Ratio) between the most populated delegate district and the least populated district as reflected in Joint Exhibit #2 which is attached hereto and made a part hereof for all pertinent purposes, the figures shown therein being in all respects correct.

*Stipulation #5.* Under the provisions of West Virginia Code 1–2–2 (H.B. 1) when applied to the revised census figures shown in Joint Exhibit #2, 46.5% of the total West Virginia population could elect a majority of the House of Delegates.

*Stipulation #6.* Plaintiffs' Exhibit #1 is a true and correct copy of the 1970 U. S. Census of Population with respect to West Virginia.

*Stipulation #7.* Plaintiffs' Exhibit #2 is a true and correct copy of West Virginia Code 1–2–2 (H.B. 1) enacted by the 1971 Legislature in extraordinary session and signed into law by the Governor of West Virginia on November 22, 1971.

*Stipulation #8.* Senate Concurrent Resolution #1 was enacted by the 1971 Legislature in extraordinary session and is attached hereto as Joint Exhibit #3 to be made a part hereof for all pertinent purposes.

Accompanying the stipulations is a table, designated Joint Exhibit No. 2, which sets out in detail the salient figures relative to apportionment of the membership of the West Virginia House of Delegates under House Bill No. 1, the legislation attacked in this action. To illustrate briefly the situation presented: Monroe County is shown to have a population of 11,448 with one member in the House of Delegates, while Preston County has a population of 25,864 with one delegate in the House of Delegates. Two

of the plaintiffs in this action are citizens of Preston County. Other comparable factual situations are detailed by the table but need not be particularized here.

## I.

The single, basic issue presented in this action is whether House Bill No. 1, in providing apportionment of members in the West Virginia House of Delegates, constitutionally complies with the "one man—one vote" principle developed by the United States Supreme Court in its application of the equal protection clause of the Fourteenth Amendment. The pertinent language of the Fourteenth Amendment immediately involved provides that no "state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."

In their complaint plaintiffs seek a declaratory judgment that provisions of the West Virginia Constitution, Article VI, Sections 4, 6 and 7, are unconstitutional and void. The defendant responds that the West Virginia Legislature is mindful of the possibility that these provisions of the West Virginia Constitution in their application to legislative apportionment may be invalid in some particulars and that the Legislature has adopted Senate Concurrent Resolution No. 1 setting up a study committee to make recommendations to the Legislature for proposed amendments to the State's Constitution in order to conform the provisions of Article VI to requirements of the equal protection clause of the United States Constitution. The issues presented concerning the constitutional validity of these provisions of the West Virginia Constitution are basic and consequential in developing a legislative apportionment plan. The Court at this time reserves judgment on the constitutional validity of the State Constitution provisions under requirements of the equal protection clause.

## II.

Plaintiffs point out that students at higher educational institutions in the State, having been counted in the 1970 United States Census as residents of the county wherein they were then in school, were counted by the Legislature in their home counties with the result that the 1970 United States Census figures were not employed wholly as bases for legislative apportionment. The West Virginia Constitution contemplates use of the decennial census of the United States in legislative apportionment. West Virginia Constitution, Article VI, Sections 7 and 10. The West Virginia Supreme Court of Appeals, in Robertson v. Hatcher, *supra*, recognizes reliance upon the decennial United States census for legislative apportionment purposes. The Legislature, in Section 2a of House Bill No. 1, makes findings and declarations explanatory of its action in departing from the official 1970 United States census population counts in arriving at county population counts adjusted to conform to its understanding of the requirements of the West Virginia Constitution.

Stipulations #2 and #3 affirm plaintiffs' position concerning the student population transfer factor in the Legislature's enactment of House Bill No. 1. To illustrate the effect of this transfer, Monongalia County's 1970 United States census population was 63,714, whereas, with the student population factor considered, the County's population figure dropped to 51,888, a population difference of 11,826. Two of the plaintiffs in this action are Monongalia County citizens and residents. Testimony at the hearing discloses student population figures were obtained by the Legislature from records of the West Virginia Board of Regents, the governmental agency governing public institutions of higher education in the state. The procedures and mechanics by which these figures were employed in population adjustments are not clearly disclosed by the record. The equal protection clause of the United States Constitution does not require that states use the total population figures of the official United States census "as the standard by which . . . substantial population equivalency is to be meas-

ured" for state legislative apportionment. Burns v. Richardson, 384 U.S. 73, 91, 86 S.Ct. 1286, 1296, 16 L.Ed.2d 376 (1966). The United States census is regularly and reliably taken on standards and under rules applicable to the entire nation. It is the generally accepted basis for population counts of a state, county, municipality or magisterial district. As noted in Burns v. Richardson, *supra*, use of other figures and counts may precipitate problems and questions to be avoided. Since the West Virginia Constitution plainly contemplates legislative apportionment on bases of the decennial United States census figures, this Court will look with disfavor on any material departures therefrom, in the absence of substantial justification thereof, and any such departures will be presumptively unwarranted. Troxler v. St. John the Baptist Parish Police Jury, 331 F.Supp. 222, 224 (D.C.La.1971). This is not to imply, however, that the counting of students at the places where they are attending school for census purposes is conclusive of their right to vote at such locations, for such right must be left to the determination of the properly constituted election authorities in such localities.

### III.

Some basic propositions of law provide guidelines for the Court's considerations and decision in this action.

In State ex rel. Metz v. Bailey, 152 W.Va. 53, 159 S.E.2d 673 (1968), the West Virginia Supreme Court of Appeals enunciated, in point 2 of the syllabus, the following basic proposition:

When the constitutionality of a statute is challenged, every reasonable construction must be resorted to by the courts to sustain its validity and any reasonable doubt must be resolved in favor of the constitutionality of the legislative act in question.

See also 16 Am.Jur.2d, Constitutional Law, Sections 137 and 144 (1964); 16 C.J.S. Constitutional Law §§ 98–99, pp. 357–445 (1956).

The United States Constitution, Article IV, Section 4, assures that the "United States shall guarantee to every state in this Union a republican form of government."

The Constitution, in Article VI, paragraph 2, provides:

This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land

. . . .

The West Virginia Constitution, Article I, Section 1, provides that the "Constitution of the United States of America, and the laws and treaties made in pursuance thereof, shall be the supreme law of the land."

The State's Constitution further provides, in Article II, Section 4:

Every citizen shall be entitled to equal representation in the government, and, in all apportionments of representation, equality of numbers of those entitled thereto, shall as far as practicable be preserved.

The Supreme Court of the United States, in Reynolds v. Sims, *supra*, at page 584, 84 S.Ct. 1362, 12 L.Ed.2d 506, in passing on the constitutionality of Alabama statutes apportioning that state's legislature, clearly stated principles of law greatly controlling this Court's decision on the validity of the West Virginia apportionment statute, House Bill No. 1. One paragraph of the Supreme Court's decision in the Alabama case follows:

Although general provisions of the Alabama Constitution provide that the apportionment of seats in both houses of the Alabama Legislature should be on a population basis, other more detailed provisions clearly make compliance with both sets of requirements impossible. With respect to the operation of the Equal Protection Clause, it makes no difference whether a State's apportionment scheme is embodied in its constitution or in statutory provi-

sions. In those States where the alleged malapportionment has resulted from noncompliance with state constitutional provisions which, if complied with, would result in an apportionment valid under the Equal Protection Clause, the judicial task of providing effective relief would appear to be rather simple. We agree with the view of the District Court that state constitutional provisions should be deemed violative of the Federal Constitution only when validly asserted constitutional rights could not otherwise be protected and effectuated. Clearly, courts should attempt to accommodate the relief ordered to the apportionment provisions of state constitutions insofar as is possible. But it is also quite clear that a state legislative apportionment scheme is no less violative of the Federal Constitution when it is based on state constitutional provisions which have been consistently complied with than when resulting from a noncompliance with state constitutional requirements. When there is an unavoidable conflict between the Federal and a State Constitution, the Supremacy Clause of course controls.

■ In the light of these principles and propositions of law, the Court has carefully weighed the West Virginia statute, House Bill No. 1, and finds it constitutionally wanting. Without further detailing the factual information disclosed in the pleadings, exhibits, oral testimony, and memoranda and arguments of counsel, reference is again made to the stipulations of the parties hereto. Stipulation #1 states that the Legislature, within the limitations imposed by the West Virginia Constitution, Article VI, Sections 4, 6 and 7, cannot significantly improve upon the overall percentage deviation from population equality in the plan for the House of Delegates apportionment, as embodied in the statute here challenged as unconstitutional under the equal protection clause of the United States Constitution and the "one man—one vote" rule enunciated by the United States Supreme Court. Stipula-

tion #4 states that the challenged statute, "when applied to the revised census figures described above, results in a 83% deviation from population equality and a 2.26 to 1 ratio (also known as the Maximum Under Representation Ratio) between the most populated district and the least populated district as reflected in Joint Exhibit #2 which is appended hereto and made a part hereof for all pertinent purposes, the figures shown therein being in all respects correct." Stipulation #5 states that, under provisions of the statute (House Bill No. 1), "when applied to the census figures shown in Joint Exhibit #2, 46.5% of the total West Virginia population could elect a majority of the House of Delegates." Joint Exhibit #2, mentioned herein and made a part of the stipulations of counsel, will be included as an Appendix to the Court's opinion.

The deviation from population equality manifest in the West Virginia Legislature's enactment for its House of Delegates apportionment is impermissible. When the population equality variances of this case are examined in the light of United States Supreme Court decisions arising from other jurisdictions, a presumption of the constitutionality of the West Virginia statute necessarily disappears. See Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967); Kirkpatrick v. Preisler, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969); and Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971).

## IV.

Upon consideration of the entire record before the Court, the following conclusions are made:

1. Plaintiffs' action is brought as a class action and the Court determines, pursuant to Rule 23(c) (1), Federal Rules of Civil Procedure, that it may be so maintained.

2. The legislation challenged, House Bill No. 1, enacted by the West Virginia Legislature on November 4, 1971, is unconstitutional and void. In its attempt to apportion the membership of the

House of Delegates of the West Virginia Legislature, it fails to comply with voting equality and weight requirements of the equal protection clause of the United States Constitution and the "one man—one vote" principle enunciated by the United States Supreme Court thereunder. The enactment embraces a total plan for apportionment of the House of Delegates, without provision or bases for severability, and is unconstitutional in its entirety. State ex rel. State Building Commission v. Bailey, 151 W.Va. 79, 150 S.E.2d 449 (1966).

■ 3. Material departures from the decennial United States census population counts in legislative apportionment statutes, in the absence of substantial justification, are presumptively unwarranted.

■ 4. In state legislative apportionments, the equal protection clause of the United States Constitution and the "one man—one vote" principle developed therefrom, being a part of the supreme law of the land, will prevail over any inconsistent provisions of a state constitution. As stated by the United States Supreme Court in Reynolds v. Sims, *supra*, "When there is an unavoidable conflict between the Federal and a State Constitution, the Supremacy Clause of course controls." The West Virginia Constitution, Article I, Section 1, in clear language recognizes that the "Constitution of the United States of America, and the laws and treaties made in pursuance thereof, shall be the supreme law of the land." No more explicit conclusions need be stated here.

■ 5. The defense of laches is supported neither by facts nor by law.

■ 6. It is the responsibility of the Legislature to reapportion its membership in both the Senate and House of Delegates in compliance with requirements of the equal protection clause of the United States Constitution. Reynolds v. Sims, *supra*. The Legislature is now in regular session and such session may be extended and the Legislature may be called into extraordinary sessions.

West Virginia Constitution, Article VI, Sections 18–19.

7. The Governor of West Virginia vetoed the 1971 State Senate reapportionment act passed by the Legislature at the same extraordinary session during which the Legislature passed House Bill No. 1, the House of Delegates apportionment act, under consideration in this action. The obvious purpose of the two companion legislative measures was to apportion the State Senate and the House of Delegates as required by the West Virginia Constitution, Article VI, Sections 7 and 10. This veto action by the Governor restores force and effect to the Senate districting and apportionment law, West Virginia Code, Section 1–2–1, enacted by Chapter 1, Acts of the West Virginia Legislature, first extraordinary session of 1964. The Court's action, declaring House Bill No. 1, relating to the House of Delegates apportionment, to be unconstitutional and void, restores vitality to West Virginia Code, Section 1–2–2, as enacted by said Chapter 1, Acts of the Legislature, First Extraordinary Session of 1964. Heck's Discount Centers v. Winters, Judge, 147 W.Va. 861, 877, 132 S.E.2d 374 (1963). See also 16 Am. Jur.2d, Constitutional Law, Sections 184–185 (1964); 50 Am.Jur., Statutes, Section 521 (1944); 16 C.J.S. Constitutional Law § 101, p. 469 (1953); 82 C.J.S. Statutes § 281, p. 473 (1953). Accordingly, legislative apportionment for both the Senate and House of Delegates in West Virginia reverts to the 1964 legislation which obviously finds bases in the 1960 United States census. The constitutionality of that legislation is not before the Court. That enactment is discussed in a Note, 71 West Virginia Law Review 171 (1969).

## V.

As previously noted, the United States Supreme Court has held that "legislative apportionment is primarily a matter for legislative consideration and determination, and that judicial relief becomes appropriate only when a legislature fails to reapportion *according to federal con-*

stitutional requisites in a timely fashion after having had an adequate opportunity to do so." Reynolds v. Sims, *supra.* The record discloses that the West Virginia Legislature has had extensive studies made concerning reapportionment of the membership of the Senate and House of Delegates. At the hearing in this action on January 17, 1972, two new apportionment plans were presented and others were discussed. In its 1971 enactment of House Bill No. 1, the Legislature obviously responded to the advice given by the Attorney General of West Virginia, in his opinion of September 29, 1971, "to follow our State Constitution, until a Court of competent jurisdiction concludes to the contrary." House Bill No. 1 is now declared by this Court to be unconstitutional under provisions of the United States Constitution.

The Legislature has a choice between (1) inaction on further legislative apportionment legislation, allowing elections to be conducted under apportionment statutes enacted in 1964, or (2) action to develop a new apportionment plan following guidelines enunciated by the United States Supreme Court in its interpretation and application of the equal protection clause of the Fourteenth Amendment to the United States Constitution and the "one man—one vote" principle developed therefrom. Extensive delays in the enactment of a constitutionally acceptable legislative apportionment plan cannot be tolerated. Experiences encountered in other jurisdictions are not to be encouraged. Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964); Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964); Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964); Ely v. Klahr, 403 U.S. 108, 91 S.Ct. 1803, 29 L.Ed.2d 352 (1971).

In the interest of orderly elections in 1972, the Court has been disposed to move promptly in declaring House Bill No. 1 unconstitutional and to leave no doubt that it is the responsibility of the Legislature to enact a constitutionally acceptable legislative apportionment plan in conformity with the equal protection clause and the "one man—one vote" principle. Further, the Court is disposed to avoid judicial restraints at this time and to withhold for a reasonable period of time mandatory reapportionment procedures and plans in order that, through orderly constituted processes, the manifest concern of the Legislature may have sufficient working freedom to develop a valid House of Delegates apportionment plan. This tolerance will not continue longer than adjournment of the 1973 regular session of the Legislature. Ample time will thus be available for consideration and action on legislative apportionment at the current 1972 regular session, at extraordinary sessions which may be convened, and at the 1973 regular session which will convene on January 10, 1973. If, within the tolerance time so provided, the Legislature fails to discharge its responsibility in the enactment of a constitutionally valid House of Delegates apportionment plan, the Court will not hesitate to initiate, establish and implement judicially developed plans and to require elections to be conducted in accordance with the "one man—one vote" principle required by the United States Constitution.

## VI.

In consideration of the entire record in this action, together with the memoranda and arguments of counsel, it is

Adjudged and ordered that House Bill No. 1, enacted by the West Virginia Legislature on November 4, 1971, and approved by the Governor of West Virginia on November 22, 1971, is found and declared to be unconstitutional and void, being contrary to and in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. The enactment being invalid and void, no election procedures shall be conducted thereunder. The Court, without at this time imposing restraints and mandatory requirements, provides ample available time, not extending beyond adjournment of the 1973

regular session of the West Virginia Legislature, within which the Legislature may proceed in an orderly manner in the enactment of a valid legislative apportionment statute. The parties hereto shall, from time to time, inform the Court in writing as to progress and action of the Legislature toward enactment of the legislation herein contemplated and required.

APPENDIX TO OPINION OF THE COURT

This tablulation, designated "Joint Exhibit No. 2", was made a part of the Stipulations of Counsel, filed January 11, 1972, in Goines v. Rockefeller, Civil Action No. 71–252–CH.