Gary Peter **KLAHR**, Plaintiff,

**Herbert L. Ely, individually and as Chairman of the Democratic Party of Arizona, Intervenor-Plaintiff,**

v.

**Jack WILLIAMS, Governor of the State of Arizona, et al., Defendants.**

**No. Civ. 5112 Phoenix.**

United States District Court,
D. Arizona.

May 19, 1970.

Botsford, Simon & Jekel, J. Stephen Simon, Scottsdale, Ariz., Evans, Kitchel & Jenckes, David William West, Phoenix, Ariz., for plaintiff.

Philip J. Shea, Phoenix, Ariz., for intervenor-plaintiff.

Gary K. Nelson, Atty. Gen., John M. McGowan, Asst. Atty. Gen., for defendants.

MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

Before JERTBERG, Senior Circuit Judge, and WALSH and CRAIG, District Judges.

PER CURIAM.

In early 1966, following the decisions of the Supreme Court of the United States in Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481, and Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, this court in this cause adjudged void and unconstitutional the Arizona statute (§ 16-727, A.R.S., 1956), districting the state for the election of representatives in the United States Congress and the constitutional and statutory provisions of the state then in effect with respect to the membership and apportionment of the Arizona Legislature. Finding, in addition, that the Legislature, although having ample opportunity, had failed to enact a valid provision for congressional redistricting and a valid reapportionment of its own membership, the court ordered into effect a redistricting of congressional districts and a reapportionment of both houses of the Arizona Legislature for the 1966 primary and general elections and for such further elections as might follow until the Legislature itself adopted different and valid plans for districting and reapportionment. Klahr v. Goddard, Ariz., 250 F.Supp. 537; 254 F.Supp. 997.

In June, 1967, the Arizona Legislature chosen at the first elections held in conformity with this court's decree enacted legislation apportioning itself. However, when the legislation came before us in 1969, we held that the then newly rendered decisions of the Supreme Court in Kirkpatrick v. Preisler, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519, and Wells v. Rockefeller, 394 U.S. 542, 89 S.Ct. 1234, 22 L.Ed.2d 535, required that we hold the legislation invalid. Klahr v. Williams, Ariz., 303 F.Supp. 224.

In January, 1970, the Legislature enacted Chapter 1, Twenty-Ninth Legislature, State of Arizona, First Special Session, (hereinafter "Chapter 1"), a new effort by the Legislature to apportion itself and to district the State of Arizona for the election of congressional representatives. Chapter 1 was approved by the Governor on January 22, 1970, and became effective on April 20, 1970. Following enactment of Chapter 1, defendants petitioned us for a hearing and asked that we determine that Chapter 1 accomplished a valid redistricting of the state's congressional districts and a valid reapportionment of the Arizona Legislature. A hearing was held on April 16 and 17, 1970, in which all parties participated and were heard.

Plaintiff, Klahr, does not question the validity of Chapter 1 insofar as it apportions the Arizona Legislature but he contends that with respect to congressional redistricting the Legislature has not devised a constitutionally valid plan because it was possible for the Legislature to have made the three congressional districts more nearly equal in population than it did in Chapter 1. Plaintiff asks an order of this court that, until a valid plan of redistricting is enacted by the Legislature, the defendants conduct the 1970 and all subsequent primary and general elections for Members of the United States House of Representatives from Arizona in a manner whereby each person seeking such office will run at large within the State of Arizona.

Intervenor-plaintiff, Ely, challenges the constitutionality of Chapter 1 insofar as it provides for apportionment of the Legislature, contending that the legislative districts established by Chapter 1 were determined upon the erroneous assumption that population can validly

be calculated from voter registration figures. He contends that, if Chapter 1 becomes operative, the result will be serious under-representation in the Legislature of certain areas of the state.

Intervenor-plaintiff has submitted to the court, and asks the court to place into effect, a plan devised by his counsel for apportionment of the Legislature on the basis of 1968 projections of 1960 and 1965 Arizona censuses. The projections or estimates of population are prepared by the staff of the Arizona Employment Security Commission, using procedures prescribed by the United States Bureau of the Census. The heart of the plan proposed by intervenor-plaintiff is the building of legislative districts from census divisions, enumeration districts, and tracts. At the hearing, intervenor-plaintiff introduced testimony and exhibits in support of his proposed plan, the exhibits consisting, *inter alia*, of population estimates broken down by census divisions, enumeration districts, and tracts; maps of Arizona county census divisions, enumeration districts, and tracts; boundary descriptions of the census divisions existing within Arizona counties; and varicolored maps showing thirty legislative districts as proposed by intervenor-plaintiff. From what was presented to us, it is evident that counsel for intervenor-plaintiff expended a great deal of time, effort, and skill in preparing his plan. We can say that counsel was on the right track and that very likely a valid reapportionment plan could result from what counsel has in mind. However, we must hold that the plan is simply not complete and we could not adopt it. No written legal descriptions of the boundaries of the proposed legislative districts have been furnished to us, and from our study of the testimony and exhibits we are not certain that such descriptions can be derived from the census district and tract boundaries. Admittedly, there are population errors in a number of districts delineated in the plan as filed, and we are not certain that they would be cured by adjustments which counsel suggested in the course of the trial could be made. At all events, before intervenor-plaintiff's plan could be placed into operation practically every election precinct in the State of Arizona would have to be re-established, since the plan disregards election precinct boundaries entirely. The 1970 election process begins in Arizona in early June and we are certain that, even if we had the complete cooperation of the election officials of the fourteen Arizona counties, the necessary reconstruction of the election precincts could not be accomplished in time.

Before proceeding to a consideration of Chapter 1, we feel it is in order to examine and discuss the redistricting and reapportionment plan which this court adopted in 1966 and which has been in effect from that date up to the present. When this court entered its decree, it was done in the belief that rather substantial population deviations among congressional districts and state legislative districts were constitutionally permissible and that, with respect to sub-districts of state legislative districts, voter registration figures might be constitutionally substituted for population figures. Later decisions of the United States Supreme Court, however, have established that population deviations deemed to be constitutional in our 1966 decree would now exceed constitutional standards, Kirkpatrick v. Preisler, supra; Wells v. Rockefeller, supra; and it is clear now, also, that apportionment of members of a legislature on the basis of voter registration satisfies the Equal Protection Clause only if it produces a distribution of legislators not substantially different from that which would have resulted had a permissible population basis been used. Burns v. Richardson, 384 U.S. 73, 93, 86 S.Ct. 1286, 16 L.Ed.2d 376.

Under our 1966 decree, the congressional districts were established on the basis of 1960 population figures and

they contain deviations from ideal district populations ranging from +7.8% to −6.3%, or a total deviation range of 14.1%. The decree also reapportioned the Arizona Legislature on the basis of 1960 population figures, setting up legislative districts with deviations from the ideal district population ranging from +15.5% to −6.5%, a deviation range of 22%. Further, the decree authorized and approved legislative sub-districts within Maricopa and Pima Counties which were proposed by the parties and were drawn upon the basis of 1964 voter registrations in the two counties. On such voter registration basis, the decree permits deviations from the ideal sub-district registration ranging from +5.66% to −8.87%, or a total range of 14.53%. It appears now that if the sub-districts are tested on the basis of their 1968 voter registration figures, the deviations from the ideal sub-district registration would range from −22.12% to +24.97%, or an expanse of 47.09%.

In light of the foregoing, we must conclude that, tested by *Kirkpatrick, Wells,* and *Burns,* supra, the present congressional districting and state legislative apportionment plan does not meet constitutional standards.

Turning now to Chapter 1, the Act provides that, commencing with the 30th Legislature, the Arizona Senate shall consist of thirty members and the Arizona House of Representatives shall consist of sixty members. For the 30th Legislature, and until changed by the Legislature, Chapter 1 provides that there will exist thirty legislative districts, each of which shall elect one senator and two representatives; and the legislative districts are described in Chapter 1 by numbered election precincts, or parts of such precincts, or by county names, or by both, as established on January 1, 1970. With respect to congressional districts, Chapter 1 provides that District No. 1 is comprised of specified legislative districts or parts of

legislative districts within Maricopa County; District No. 2 is comprised of five Arizona Counties, viz: Cochise, Pima, Pinal, Santa Cruz, and Yuma; and District No. 3 is comprised of eight Arizona Counties, viz: Apache, Coconino, Gila, Graham, Greenlee, Mohave, Navajo, and Yavapai, plus the part of Maricopa County not included within District No. 1.

The evidence before us discloses that the legislative districts which the Arizona Legislature adopted in Chapter 1 were produced with the aid of computers. According to the testimony of the persons in charge of the computer process, criteria provided to them by certain members of the Legislature were built into the computer program which produced the legislative districts. From the testimony, the criteria, in the order of their importance, were: first, minimum population deviations from the district norm; second, legislator incumbency; third, compactness of the district; fourth, party strength in the district.

With respect to the population factor utilized in programming the computer, no attempt was made to use recent population estimates but the programmers devised a formula which is described as "converting 1968 voter registration to 1960 census on a proportionate basis". Use of the conversion formula seems to have been deemed proper because this court's 1966 decree permitted and provided for legislative sub-districts in Maricopa and Pima Counties drawn upon the basis of 1964 voter registration in those counties, rather than upon population. The population factor in each of the election precincts comprising part of a legislative district was obtained by instructing the computer to take the 1968 voter registration for the precinct and divide it by the 1968 voter registration for the county in which the precinct was located, thereby obtaining the percentage of registered voters of the county residing within the precinct. The computer was then directed to multiply that percentage figure by the 1960 cen-

sus for the county in which the precinct was located, thereby obtaining the population factor for the precinct. It is obvious, of course, that although the 1960 population enters into the conversion formula, the population figures produced for the respective precincts comprising the legislative districts do not truly represent the population within those precincts in either 1960 or 1968.

When translated, the criterion "legislator incumbency" is but a ground rule utilized in an effort to insure that no more than one incumbent senator and two incumbent representatives will reside within any legislative district produced by the computer.

With respect to the "party strength" criterion, it apparently operated thusly: If, in building a legislative district from precincts, the precincts first selected have a history of voting heavily for one particular political party, then in selecting additional precincts for the district preference is to be given to those precincts which have a like history. The theory, it seems, is that legislative districts should be either heavily Democratic or heavily Republican, and not closely balanced on party lines.

The legislative districts produced with the aid of the computer do have a remarkably small deviation from the ideal or the norm, ranging between one district with a +.81% deviation and a district with a −.99% deviation, or a total deviation range of 1.8%; and the deviations among the congressional districts established in Chapter 1 range from +1.47% to −1.41%. We cannot, however, hold the districting and apportionment constitutionally valid. As pointed out above, the figures produced by the conversion formula as population are not truly population figures and we cannot find that the distribution of Members of Congress or legislators provided by Chapter 1 is not substantially different from that which would have resulted had a permissible population basis been used. Further, the incumbency factor has no place in any reapportionment or redistricting. "The goal of reapportionment * * * is just representation of the people, not the protection of incumbents in a legislative body." League of Nebraska Municipalities v. Marsh, Neb., 242 F.Supp. 357, 360. In addition, we disapprove as inapposite the consideration of party strength as a factor in reapportionment or redistricting.

Having found wanting in constitutionality the districting and apportionment plans of both the court and the Legislature, we face the questions of what can and should be done by the court. The 1970 elections are close at hand. Nomination petitions are likely circulating at the present time; nomination papers and petitions may be filed as early as June 10, and they must be filed not later than July 10. As one of the experienced election officials stated during the hearing, election precincts and all other arrangements for the elections should be set up by June 1. The usual practice of allowing time for the Legislature to act, failing which the court will act, is out of the question. Further, because of the imminency of the Arizona elective process, judicial districting and apportionment, even if possible at all, cannot be accomplished without the court's judicial alteration of the statutory plan and scheduling for holding primary elections, a course which would involve serious risk of confusion and chaos.

A decree directing that in this year's elections the Arizona Members of Congress and the members of the Legislature be elected "at large" is a possible solution; but the ordeal involved in conducting elections in which ninety seats in the Legislature are in contest is so obvious and grave that we could justify requiring it only if we were convinced that the Legislature's failure to enact a valid and effective plan for districting and apportionment was deliberate and inexcusable. However, it is not our belief that the failure to have presently for Arizona a valid and effective plan

for redistricting and reapportionment is the result of obduracy on the part of the present Legislature. In truth, it appears that the lack of an official state census since 1960, accompanied by the large increase in population since 1960, has understandably left the Legislature uncertain as to how to arrive at a valid population basis for reapportionment and redistricting.

Presently, the decennial census is being taken in Arizona and we are informed that the detailed figures developed therefrom will be available in the summer of 1971. It does not appear reasonable to us to conclude that we are required to select either a precipitate venture into judicial districting and apportionment or an "at large" election, solely for the last elections that will be held before the 1970 census figures are available. We think that we may properly either order the 1970 elections of Arizona Members of Congress and members of the Legislature to be held in accordance with our 1966 decree or adopt the provisions of Chapter 1 as a temporary plan of redistricting and reapportionment to be in effect only for the 1970 elections.

We have studied both our decree and Chapter 1, and we have concluded that, of the two, Chapter 1 more nearly conforms with the mandate "one man, one vote", which derives from the Equal Protection Clause. Consequently, we will adopt the provisions of Chapter 1 to govern the elections of Arizona Members of Congress and members of the Legislature for the 1970 elections and enter a decree accordingly.

As mentioned earlier, plaintiff has asked that we order "at large" elections of Members of Congress this year. His request is based upon the fact that there is evidence before us that the Legislature could have reduced the range of deviations from the ideal among congressional districts below the 2.9% which is produced by Chapter 1. In arguing plaintiff's request, counsel frankly stated that the idea of mandated "at large" elections was repugnant to him, as it is to us. Since the deviation range is relatively quite small, and since we are dealing with the last congressional elections before official census figures will be available, we deny the request notwithstanding "at large" congressional elections would not present the grave problems and difficulties inherent in "at large" elections of members of the Legislature.

## THIRD SUPPLEMENTAL DECREE

The court having this day filed herein its Memorandum Opinion and Findings of Fact and Conclusions of Law, and good cause appearing therefor,

It is ordered, adjudged, and decreed:

### I

The reapportionment plan and the redistricting plan set forth in the Findings, Conclusions, and Decree entered in this cause on February 2, 1966, though deemed constitutionally valid when adopted, are presently unconstitutional; and the congressional districts, legislative districts, and legislative sub-districts set forth in said Findings, Conclusions, and Decree are presently unconstitutional.

### II

Chapter I, Twenty-Ninth Legislature, State of Arizona, First Special Session (hereinafter "Chapter 1"), does not provide a constitutionally valid districting of the State of Arizona for the election of Arizona Members of the House of Representatives nor a constitutionally valid apportionment of the members of the Arizona Legislature; but because of the imminence of the 1970 Arizona elections, the court adopts for said elections the provisions of Chapter 1 to govern the selection of Arizona Members of Congress and members of the Legislature.

### III

The Thirtieth Legislature, State of Arizona, shall consist of thirty (30)

members of the senate and sixty (60) members of the house of representatives. The legislative districts of the Thirtieth Legislature shall be as set forth and described in Chapter 1, and at the Arizona elections held in 1970, one (1) senator and two (2) representatives shall be elected from each legislative district.

## IV

The congressional districts from which the Members to the House of Representatives from Arizona shall be selected in 1970, to serve in the 92nd Congress of the United States, shall be as set out in Chapter 1.

## V

The respective boards of supervisors of Arizona are authorized, until June 1, 1970, to adjust the boundaries of precincts within a legislative district in order to provide convenient polling places for voters.

## VI

Except to the extent they are inconsistent herewith, the terms and provisions of the decree entered herein on February 2, 1966, and the terms and provisions of the supplemental decrees entered on March 14, 1966, and December 5, 1966, respectively, shall remain in force and effect until the further order of this court.

## VII

The court, having been advised that detailed population figures for the State of Arizona will be available from the official 1970 census by the summer of 1971, assumes that the Arizona Legislature will by November 1, 1971, enact a valid plan of reapportionment for both houses of the Arizona Legislature and a valid plan of redistricting the congressional districts of Arizona. Upon failure of the Legislature so to do, any party to this action may apply to the court for appropriate relief.

## VIII

This court retains jurisdiction of this cause to fully carry into effect the foregoing.