John FLATEAU, Robert V. Connelly, Audrey Bynoe and Angel A. Rodriguez, and all persons similarly situated, and Stanley Fink, both individually and as Speaker of the Assembly of the State of New York, Plaintiffs,

and

Puerto Rican Legal Defense and Education Fund, Inc., et al., and Manfred Ohrenstein, Plaintiffs-Intervenors,

v.

Warren M. ANDERSON, both individually and as Temporary President and Majority Leader of the New York State Senate; Jay P. Rolison, Jr., both individually and as Co-chairman of the Legislative Task Force on Reapportionment; the Senate of the State of New York; Melvin Miller, both individually and as Co-chairman of the Legislative Task Force on Reapportionment; the Assembly of the State of New York; Hugh L. Carey, both individually and as the Governor of the State of New York; Mario M. Cuomo, both individually and as Lieutenant Governor of the State of New York and as Presiding Officer and President of the Senate of the State of New York; the Legislative Advisory Task Force and the Board of Elections of the State of New York, Defendants,

and

James L. Emery, Defendant-Intervenor.

No. 82 Civ. 876.

United States District Court,
S. D. New York.

April 2, 1982.

Paul Wooten, Brooklyn, N. Y., for plaintiffs John Flateau, Robert V. Connelly, Audrey Bynoe, and Angel A. Rodriguez.

Lizette A. Cantres, Cesar A. Perales, New York City, for plaintiff-intervenor Puerto Rican Legal Defense and Ed. Fund, Inc.

C. Daniel Chill, New York City, for plaintiff Stanley Fink, Speaker of the New York State Assembly.

Martin E. Connor, Brooklyn, N. Y., for plaintiff-intervenor Manfred Ohrenstein, Minority Leader of the New York State Senate.

John F. Haggerty, Michael R. Lanzarone, New York City, for defendants Warren M. Anderson, Temporary President and Majority Leader of the New York State Senate, State Senator Jay P. Rolison, Jr., and the New York State Senate.

Robert Abrams, New York State Atty. Gen. by George D. Zuckerman, and Richard Liskov, Asst. Attys. Gen., New York City, for defendants Hugh L. Carey, Mario Cuomo, and the New York State Bd. of Elections.

Richard S. Scolaro, Scolaro, Shulman & Cohen, P. C., Syracuse, N. Y., for James L. Emery, Minority Leader of the New York State Assembly.

Robert F. Kelly, New York City by Arthur Eisenberg and Richard Emery, New York Civil Liberties Union, New York City, and by William J. Hibsher, U. S. Dept. of Justice, Civil Rights Unit, as amici curiae, for defendant Legislative Advisory Task Force on Reapportionment.

Before PIERCE, Circuit Judge, and ROBERT J. WARD, and VINCENT L. BRODERICK, District Judges.

## OPINION

PER CURIAM.

### I.

This lawsuit challenges the constitutionality of the present apportionment scheme of the New York State Senate, Assembly and congressional districts. Plaintiffs are four New York State voters, the Speaker of the State Assembly, the Minority Leader of the State Senate, and the Puerto Rican Legal Defense and Education Fund, Inc. Defendants are the Majority Leader of the State Senate, the Senate itself, the Minority Leader of the State Assembly, the Assembly, the Governor, the Lieutenant Governor, the State Board of Elections, and the Legislative Advisory Task Force on Reapportionment and its two co-chairmen.[1]

1. The original plaintiffs were voters John Flateau, Robert V. Connelly, Audrey Bynoe and Angel A. Rodriguez. Stanley Fink, Speaker of the Assembly, was originally named as a defendant; with the consent of all parties he was realigned as a plaintiff. The Puerto Rican Legal Defense and Education Fund, Inc. and Manfred Ohrenstein, the Minority Leader of the

The complaint was filed on February 10, 1982. Pursuant to 28 U.S.C. § 2284, a three-judge court was convened. The court heard argument on various motions, including motions for summary judgment, on March 26, 1982.

All plaintiffs essentially argue that based on the 1980 New York decennial census data, which show a shift and decrease in total population, the existing apportionment schemes for New York's legislative and congressional districts, drawn pursuant to the 1970 census, violate, respectively, the "one-person, one-vote" principle enunciated under the Equal Protection Clause, *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and Article 1, § 2 of the United States Constitution. Some plaintiffs also urge that due to an increase in minority population the existing apportionment scheme for the state legislature violates the Fifteenth Amendment to the United States Constitution and the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973 *et seq.* (1981). All the plaintiffs urge that the present apportionment schemes be declared unconstitutional.

All but one plaintiff request the court to order New York State to enact a constitutional plan of reapportionment by April 16, 1982 and failing that, request that this court devise a reapportionment plan. The Puerto Rican Legal Defense and Education Fund, Inc. requests that the court itself immediately redistrict the State.

Certain of the defendants (the State Senate, Warren M. Anderson individually and as Majority Leader of the Senate, and Jay P. Rolison, Jr. individually and as co-chairman of the Legislative Advisory Task Force on Reapportionment) agree that a reapportionment plan must be enacted now with respect to New York's congressional districts but dispute the need to reapportion immediately with respect to the state legislative districts. They argue that Article 3, § 4 of the New York State constitution allows up to six years for the creation of a reapportionment plan for State Senate and Assembly districts.[2]

Governor Carey, another defendant, agrees with plaintiffs that the state should be required to prepare redistricting plans for congressional, Senate and Assembly districts by a date to be fixed by the court, but cautions against any finding of unconstitutionality which would affect either the power of the legislature to act as presently constituted, or the propriety of filling existing legislative vacancies by special elections prior to redistricting. All defendants urge that there should be no finding that the present district lines violate either the Voting Rights Act of 1965 or the Fifteenth Amendment.

At the conclusion of the arguments on March 26, 1982, we disposed of the pending motions for summary judgment by issuing an order 1) which held that the present

State Senate, were permitted to intervene as plaintiffs. James L. Emery, Minority Leader of the State Assembly, was permitted to intervene as a defendant.

**2.** The relevant part of Article 3, § 4, of the State constitution provides:

Except as herein otherwise provided, the federal census taken in the year nineteen hundred thirty and each federal census taken decennially thereafter shall be controlling as to the number of inhabitants in the state or any part thereof for the purposes of the apportionment of members of assembly and readjustment or alteration of senate and assembly districts next occurring, in so far as such census and the tabulation thereof purport to give the information necessary therefor.... At the regular session in the year nineteen hundred thirty-two, and at the first

regular session after the year nineteen hundred forty and after each tenth year therefrom the senate districts shall be readjusted or altered, but if, in any decade, counting from and including that which begins with the year nineteen hundred thirty-one, such a readjustment or alteration is not made at the time above prescribed, it shall be made at a subsequent session occurring not later than the sixth year of such decade, meaning not later than nineteen hundred thirty-six, nineteen hundred forty-six, nineteen hundred fifty-six, and so on; provided, however, that if such districts shall have been readjusted or altered by law in either of the years nineteen hundred thirty or nineteen hundred thirty-one, they shall remain unaltered until the first regular session after the year nineteen hundred forty.

New York congressional, Senate and Assembly districts may not, consistent with the Equal Protection Clause of the Fourteenth Amendment and Article 1, § 2 of the Constitution, be employed to conduct any elections for terms commencing on or after January 1, 1983; 2) which directed New York State to devise and enact a constitutional reapportionment plan for Senate, Assembly and congressional districts by April 16, 1982; 3) which specified that special elections intended to fill vacancies in the present state legislature were not affected by the order; and 4) which retained jurisdiction in this court pending final resolution of all issues raised in this action. This opinion sets forth the bases upon which that order was issued.

## II.

There is no dispute with respect to the following: [3]

In 1972, the New York State Legislature with the approval of, the Governor enacted congressional and State Senate and Assembly reapportionment and redistricting plans for the 1972 statewide primary and general elections.[4]

On January 10, 1974 the United States District Court for the District of Columbia entered an order subjecting the counties of Kings, New York and Bronx to the provisions of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973 et seq., thus requiring compliance, as to those counties, with the preclearance requirements of Section 5, 42 U.S.C. § 1973c.[5] To effect such compliance, New York State in 1974 amended the 1972 reapportionment and redistricting plans by altering 16 out of 150 Assembly districts, 8 out of 60 Senate districts, and 4 out of 39 congressional districts. 1974 New York Laws, c. 588, c. 589.

Since 1974 no new reapportionment or redistricting has taken place.

On December 31, 1980 the United States Census Bureau officially certified to the President of the United States the total population of New York State as 17,557,288. As a result of the decrease in New York's population as evidenced by the census, New York State has lost 5 congressional seats, from 39 to 34. The population mean of each congressional district will be 516,391 persons.[6] Based on a presently existing State Senate of 60 members, the population mean of each senatorial district under the 1980 census will be 292,621 persons. The population mean of each of the 150 Assembly districts will be 117,048 persons.

---

**3.** The parties executed and filed a stipulation from which the statement of facts in this opinion is derived.

**4.** The Assembly and Senate are the legislative bodies of the State of New York. The Assembly presently consists of 147 duly elected members, with 3 vacancies, from 150 districts throughout New York State; the Senate consists of 58 duly elected members, with 2 vacancies, from 60 districts throughout New York State. The Senate and Assembly are required by Article 3, § 4 of the New York State constitution to act as co-equal participants in altering and adjusting congressional, Senate and Assembly district lines after each federal decennial census.

**5.** Section 5, 42 U.S.C. § 1973c, deals with, inter alia, the alteration of voting qualifications and procedures. Section 5 provides in pertinent part:

[W]henever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the first sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1972, such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure . . .

**6.** If New York's 1980 census population of 17,557,288 were distributed among the 39 existing congressional seats, the population mean would be 450,187 and not 516,391.

Based on the above figures, the maximum positive and negative percentage deviations from the population means for the State Senate and Assembly districts as presently constituted are as follows: [7]

| District | Percentage Deviation from Population Mean | Maximum Percentage Deviation |
|---|---|---|
| Senate #1 | 48.91 | |
| Senate #32 | –35.84 | 84.75 |
| Assembly #1 | 51.91 | |
| Assembly #79 | –57.09 | 109.00 |

It has been conceded that if a legislative reapportionment plan for the State Assembly and Senate were enacted today which contained such deviations from the population means, it would violate the Equal Protection Clause of the Fourteenth Amendment.[8] *See* Stipulation 15 of Stipulation of Facts.

The New York State Legislature has been convened in regular session since January 6, 1982, and has not passed a new apportionment plan based on the 1980 decennial census.[9]

The following is a partial calendar of significant dates in the New York State 1982 electoral process:

| | |
|---|---|
| State Committee meetings to designate statewide candidates | June 15–22 |
| First day to sign designating petitions for primary election | June 22 |
| Dates for filing designating petitions | July 26–29 |
| Primary Election | September 14 |
| General Election | November 2 |

Any redistricting plan enacted by New York State reapportioning New York congressional, Senate and Assembly districts will have to be enacted pursuant to the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973 *et seq.* and precleared pursuant to Section 5 of the Act, 42 U.S.C. § 1973c.[10]

There are no genuine issues of material fact with respect to the foregoing. We turn, therefore, to the issues of law.

---

7. An accepted measure in considering the constitutionality of apportionment plans is that of maximum percentage deviation from the population mean. Such a formula for determining the constitutionality of apportionment plans was approved by the Supreme Court in *Abate v. Mundt*, 403 U.S. 182, 91 S.Ct. 1904, 29 L.Ed.2d 399 (1971). The maximum percentage deviation is determined by adding the percentage deviation above the population mean of the district with the greatest number of voters to the percentage deviation below the population mean of the district with the fewest number of voters. This formula can presently be applied with respect to the State Senate and Assembly districts, since the 1980 census figures will be applied to the same number of districts. It does not lend itself to the congressional district situation, since there has been a change (from 39 to 34) in the number of districts.

8. The census figures show substantial increases in the population of racial minorities in the State of New York, particularly in Bronx and Kings Counties. We have not deemed it necessary to this point, in deciding the issues before us, to consider dilution problems. We assume that in developing appropriate reapportionment plans New York State will give consideration to such matters.

9. Both houses of the legislature have released separate proposed reapportionment plans for the State Senate and State Assembly districts and the Senate has passed Bill # 8534 for statewide congressional redistricting.

10. Because Bronx, New York, and Kings Counties fall under § 5 of the Voting Rights Act, before any reapportionment plan enacted by the legislature and signed by the Governor may be implemented, it must be submitted to the United States Attorney General for preclearance, or else a declaratory judgment approving the plan must be obtained from the United States District Court for the District of Columbia. 42 U.S.C. § 1973c. *United Jewish Organizations of Williamsburgh, Inc. v. Carey*, 430 U.S. 144, 157, 97 S.Ct. 996, 1005, 51 L.Ed.2d 229 (1977). If the plan is submitted to the Attorney General (the usual method used by covered jurisdictions), he has 60 days to file an objection or to request additional information. If no objections or requests for information are made within 60 days the plan becomes law. If an objection or a request is made, the sixty day period commences again when a satisfactory response is received. *Georgia v. United States*, 411 U.S. 526, 539, 93 S.Ct. 1702, 1710, 36 L.Ed.2d 472 (1973); 28 C.F.R. § 51.3(b)–(d). Thus a plan does not necessarily become law after the 60 days elapse.

### III.

We consider preliminarily whether the issues presented in this action are ripe for judicial intervention. Is there a case or controversy? While plaintiffs attack New York State's failure to reapportion in the wake of the 1980 decennial census, the state legislature is in session and presumably will remain in session, and it still has time to act.

All state parties, whether aligned as plaintiffs or defendants, recognize their constitutional and statutory obligation to reapportion New York's congressional districts, and this court's direction with respect to those districts was consented to by defendants.

As to State Senate and Assembly districts, some of the defendants forcefully maintain that the state is not constitutionally required to effect reapportionment this year. Of course, the concurrence of these defendants—the State Senate itself and the Majority Leader of the Senate—is necessary for enactment of any reapportionment plan. Absent intervention by this court, New York will not reapportion its Senate and Assembly districts this year unless there is a speedy change of position by these defendants. While there has been no final failure to reapportion to date, the inevitability of such failure if this court does not direct reapportionment has persuaded us that the matter is ripe for adjudication. Since New York State still has time to act, no constitutional violation has yet occurred. It is nevertheless entirely appropriate for us to conclude, as we have, that unless we direct that reapportionment of State Senate and Assembly districts take place this year it will not take place, and that such a failure would be constitutionally unacceptable. If we waited until there no longer was time in 1982 for the reapportionment to be effected, the constitutional violation would then have occurred, but it would be too late for any timely remedy to be structured. *Cf. Watson v. Commissioners Court of Harrison County*, 616 F.2d 105, 107 (5th Cir. 1980).

### IV.

The present New York statute with respect to congressional redistricting (Laws of 1972, Chs. 76, 77 and 78 as amended by Ch. 589 of the Laws of 1974), which provides for 39 congressional districts, cannot serve as the basis for the 1982 election of 34 representatives. An election held under the present congressional districting plan would therefore violate Article 1, § 2 of the United States Constitution.[11]

All parties have agreed that a new apportionment plan must be enacted for the 1982 congressional election.

### V.

Plaintiffs urge that immediate reapportionment of New York's Senate and Assembly districts, based on the data derived from the 1980 decennial census, is constitutionally compelled. Certain of the defendants[12] maintain that since there are in place carefully structured New York constitutional provisions with respect to reapportionment, New York need not reapportion its Senate

---

**11.** Article 1, § 2, Clause 3 provides:

Apportionment of representatives and taxes
Representatives and direct Taxes shall be apportioned among the several States which may be included within this Union, according to their respective Numbers, which shall be determined by adding to the whole Number of free Persons, including those bound to Service for a Term of Years, and excluding Indians not taxed, three fifths of all other Persons. The actual Enumeration shall be made within three Years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as they shall by Law direct.

The Number of Representatives shall not exceed one for every thirty Thousand, but each State shall have at Least one Representative; and until such enumeration shall be made, the State of New Hampshire shall be entitled to choose three, Massachusetts eight, Rhode Island and Providence Plantations one, Connecticut five, New York six, New Jersey four, Pennsylvania eight, Delaware one, Maryland six, Virginia ten, North Carolina five, South Carolina five, and Georgia three.

**12.** The Senate, the Senate Majority Leader, and the co-chairman of the Legislative Advisory Task Force on Reapportionment.

and Assembly districts this year so long as it does reapportion in due course in accordance with the state constitutional provisions. These provisions would permit New York to delay Senate and Assembly reapportionment until 1986.

The New York constitution does set rigorous requirements with respect to apportionment. N.Y.Const.Art. 3, §§ 4 and 5. Apportionment by the legislature is subject to review by the New York courts. It is also, as a practical matter, subject to preclearance by the Attorney General of the United States or the District Court of the District of Columbia pursuant to 42 U.S.C. § 1973c. *See* fn. 10, *supra*.

Thus these defendants present squarely to this court the issue of whether state legislative elections may be held where the legislative districts are concededly malapportioned, if the state concerned has a constitutional provision which in time will require a correction of the malapportionment. The specific question in terms of New York State is whether it would be constitutionally permissible, in the face of existing maximum percentage deviations from the mean of 84.75% for the Senate and 109% for the Assembly, to hold elections this year (and perhaps also in 1983, 1984, and 1985) on the basis of district lines which were last drawn in 1972 based on 1970 census data.

One of the fundamental Constitutional rights underlying the American system of representative government is the right of a citizen to participate in an election on an equal basis with every other citizen. *Dunn v. Blumstein*, 405 U.S. 330, 336, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972); *Seamon v. Upham*, 536 F.Supp. 931 (E.D.Tex.1982) (Justice, J., concurring and dissenting). Any alleged infringement of the right to vote requires close scrutiny:

> Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized.

*Reynolds v. Sims, supra*, 377 U.S. at 562, 84 S.Ct. at 1381.

The guiding constitutional principle, with respect to state legislative apportionment plans, is that "the seats in both houses of a bicameral state legislature must be apportioned on a population basis. Simply stated, an individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living in other parts of the State." *Id.* at 568, 84 S.Ct. at 1384. A reapportionment plan must contain "substantial equality of population among the various districts, so that the vote of any citizen is approximately equal in weight to that of any other citizen in the State." *Id.* at 579, 84 S.Ct. at 1390.

"Substantial equality" does not mean that each district must have an "identical number of residents, or citizens, or voters" because "[m]athematical exactness or precision is hardly a workable constitutional requirement." *Id.* at 577, 84 S.Ct. at 1389. Districts must, however, be "as nearly of equal population as is practicable." *Id.* See also *Gaffney v. Cummings*, 412 U.S. 735, 743–44, 93 S.Ct. 2321, 2326–37, 37 L.Ed.2d 298 (1973).

Deviations from population equality of under ten percent have been held to be "minor" with respect to state legislative districts, and they do not constitute *per se* violations of equal protection. *Gaffney v. Cummings, supra*; *Marshall v. Edwards*, 582 F.2d 927, 934 (5th Cir. 1978), *cert. denied*, 452 U.S. 938, 101 S.Ct. 3080, 69 L.Ed.2d 952 (1981). Deviations which are more than "minor" must be based on "legitimate considerations incident to the effectuation of a rational state policy" to be constitutionally permissible. *Reynolds v. Sims, supra*, 377 U.S. at 579, 84 S.Ct. at 1390. *See also Mahan v. Howell*, 410 U.S. 315, 325, 93 S.Ct. 979, 985, 35 L.Ed.2d 320 (1973).[13]

**13.** Congressional reapportionment is subject to a more stringent constitutional standard than state legislative reapportionment. *Gaffney v. Cummings, supra*, 412 U.S. at 741–42, 93 S.Ct.

In *Mahan, supra*, the policy of maintaining the integrity of political subdivision lines was held to justify a maximum percentage deviation from the population mean of 16.4%. 410 U.S. at 329, 93 S.Ct. at 987.[14] The same policy was held to justify a maximum deviation of 11.9% in *Abate v. Mundt*, 403 U.S. 182, 185, 91 S.Ct. 1904, 1906, 29 L.Ed.2d 399 (1971).

*Reynolds v. Sims, supra*, suggests a toleration of otherwise unjustifiable malapportionment if the state can demonstrate that it has adopted, and is in compliance with, "a reasonably conceived plan for periodic readjustment of legislative representation." 377 U.S. at 583, 84 S.Ct. at 1392. The mere fact that there is significant malapportionment at any given time does not necessarily give rise to a constitutional violation if the state shows that it has enacted a plan pursuant to "a rational approach to readjustment of legislative representation in order to take into account population shifts and growths." *Id.*

However, despite some tolerance for deviations in cases where a "rational state policy" will otherwise be furthered, some deviations are so substantial that no state interests or policy can justify them. *Gaffney v. Cummings, supra*, 412 U.S. at 744, 93 S.Ct. at 2327.[15] If present New York Senate and Assembly district lines were used, the maximum percentage deviations would be 84.75% and 109%, respectively. Deviations of such a magnitude, if presently enacted, would constitute *per se* violations of the equal protection principle of "one person, one vote."

Defendants argue that Article 3, § 4 of New York State's constitution evidences a "reasonably conceived plan for periodic readjustment of legislative representation." This provision mandates reapportionment to be made each decade, at some time prior to the conclusion of the sixth year of the decade. Since it is only 1982, defendants insist that there will be a constitutional violation only if a Senate and Assembly reapportionment plan has not been enacted prior to December 31, 1986.

The issue, then, becomes whether the state constitution provides "a rational approach to readjustment of legislative representation in order to take into account population shifts and growths." *Reynolds v. Sims, supra*, 377 U.S. at 583, 84 S.Ct. at 1392.

The *Reynolds* Court held that "if reapportionment were accomplished [pursuant to a state reapportionment provision] with less [than decennial] frequency, it would assuredly be constitutionally suspect." *Id.* at 584, 84 S.Ct. at 1393. Since the last reapportionment in New York occurred in 1972,[16] a failure to reapportion the current districting lines for the state legislature with respect to terms commencing on or after January 1, 1983 would render New York's present apportionment scheme more than ten years old and hence "constitutionally suspect." [17] To determine whether this scheme would be "constitutionally infirm"

---

at 2325–26; *Mahan v. Howell, supra*, 410 U.S. at 322, 93 S.Ct. at 984. Therefore, greater population deviations are permitted when a state reapportions its state legislature than when it reapportions its congressional districts. *Gaffney v. Cummings, supra; Mahan v. Howell, supra*.

**14.** The average percentage deviation in *Mahan* was ± 3.89%. Out of 52 districts, 35% were within 4% of the ideal and 9 exceeded a 6% variation from the ideal. 410 U.S. at 319, 93 S.Ct. at 982.

**15.** *See also Swann v. Adams*, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967) (a 25.65% deviation held invalid); *Kilgarlin v. Hill*, 386 U.S. 120, 122–123, 87 S.Ct. 820, 821–822, 17 L.Ed.2d 771 (1967) (a 26.48% deviation viewed with suspicion but not ruled on).

**16.** *See* p. 7, *supra*. The legislative reapportionment predicated on the 1970 census was enacted in 1972. The 1974 amendments, necessitated by the application of the Voting Rights Act, affected only 8 Senate districts, 16 Assembly districts, and 4 congressional districts.

**17.** Indeed, by allowing up to six years from the date of the last decennial census, Article 3, § 4, of the New York State constitution affords the possibility that the interval between apportionment could be as great as fourteen years, *i.e.*, reapportionment, having last occurred in 1972, might be accomplished as late as December of 1986 based on the 1980 census.

as well, we must balance the state's interest in delaying reapportionment until after the 1982 general elections against the interests of the thousands of New York voters whose voting strength in the 1982 general election stands to be diluted, relative to the voting strength of citizens living in other parts of New York State, if such a delay in reapportionment occurs. In assessing the interests of the voters we must consider the extent of the dilution.

The state certainly has interests in sovereignty and self-government and "the need for stability and continuity in the organization of the legislative system." *Reynolds v. Sims, supra,* 377 U.S. at 583, 84 S.Ct. at 1392. Apportionment is a political and legislative process with respect to which judicial caution is indicated. Defendants have, however, presented no strong or convincing reasons why reapportionment should not be accomplished in time for the 1982 general elections. They do not assert that immediate reapportionment is impossible. They, instead, rely on tradition. They argue that reapportionment ought not be accomplished this year because "[t]he tradition of New York State has been that reapportionment had [sic] not occurred until after the first election in the decade and until the third year of the decade." Transcript of Argument, March 26, 1982, at 45.

We will assume that this "tradition" of third-year reapportionment in fact exists in New York State, although we note that it was not observed in the 1960's or the 1970's.[18] Such a tradition is of significance to our present analysis only if it is an expression of significant state interests or concerns. Defendants have, however, failed to suggest any reason for the advent of this tradition; more importantly, they have advanced no argument, other than the

fact of its existence, for its continued observance. Under these circumstances, we decline to accord New York State's tradition of third-year reapportionment significant weight in striking the balance of interests described above.

The significance of the voters' interest in any given reapportionment case is primarily a function of the relative severity of the malapportionment. In New York we are faced with deviations as much as five times greater than the largest deviations that the Supreme Court has found to pass constitutional muster in newly enacted apportionment plans. Given these variations, and defendants' failure to present any compelling justification for delay, we conclude that the Equal Protection Clause of the Fourteenth Amendment, in conjunction with the Supremacy Clause of Article 6 of the United States Constitution, mandates immediate reapportionment. *Reynolds v. Sims, supra,* 377 U.S. at 583–584, 84 S.Ct. at 1392–1393; *Goines v. Rockefeller,* 338 F.Supp. 1189, 1195 (S.D.W.Va.1972); *Bennett v. Elliott,* 294 F.Supp. 808, 810 (M.D. Tenn.1968).[19]

## VI.

The United States Supreme Court has enunciated on numerous occasions that "legislative reapportionment is primarily a matter for legislative consideration and determination." *Reynolds v. Sims, supra,* 377 U.S. at 586, 84 S.Ct. at 1394; *Maryland Committee for Fair Representation v. Tawes,* 377 U.S. 656, 676, 84 S.Ct. 1429, 1440, 12 L.Ed.2d 595 (1964); *Chapman v. Meier,* 420 U.S. 1, 27, 95 S.Ct. 751, 766, 42 L.Ed.2d 766 (1975); *Connor v. Finch,* 431 U.S. 407, 414, 97 S.Ct. 1828, 1833, 52 L.Ed.2d 465 (1977). Reapportionment is a "legislative task which the federal courts should

---

**18.** New York enacted a reapportionment plan based on the 1970 census in 1972. It did not enact a reapportionment plan based on the 1960 census until 1964, and did so at that time only after having been ordered to reapportion by the United States Supreme Court. *See WMCA, Inc. v. Lomenzo,* 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 563 (1964).

**19.** As *Goines v. Rockefeller, supra,* stated in discussing the Supremacy Clause requirements: "In state legislative apportionments, the equal protection clause of the United States Constitution and the 'one man-one vote' principle developed therefrom, being a part of the supreme law of the land, will prevail over any inconsistent provisions of a state constitution." 338 F.Supp. at 1195.

make every effort not to pre-empt." *Wise v. Lipscomb,* 437 U.S. 535, 539, 98 S.Ct. 2493, 2496, 57 L.Ed.2d 411 (1978), citing to *Connor v. Finch, supra,* 431 U.S. 407, 414–415, 97 S.Ct. 1828, 1833–1834, 52 L.Ed.2d 465. *See also Seamon v. Upham, supra,* 536 F.Supp. at 938. Therefore, when the court declares an existing apportionment plan unconstitutional, it is "appropriate, whenever practicable, to afford a reasonable opportunity for the legislature to meet constitutional requirements by adopting a substitute measure rather than for the federal court to devise and order into effect its own plan." *Wise v. Lipscomb, supra,* 437 U.S. at 540, 98 S.Ct. at 2497. *See also Connor v. Finch, supra,* 431 U.S. at 414–15, 97 S.Ct. at 1833–34.

We believe that the April 16, 1982 deadline ordered by this court affords the legislature "a reasonable opportunity ... to meet constitutional requirements ..." *Wise v. Lipscomb, supra,* at 540, 98 S.Ct. at 2497. As the Supreme Court reasoned in *Reynolds v. Sims,* once a plan has been found unconstitutional, "it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan." 377 U.S. at 585, 84 S.Ct. at 1393.

The case before us is not the "unusual case" contemplated by *Reynolds v. Sims.* For example, a situation which "*might* justify a court in withholding the granting of immediately effective relief" is one "where an impending election is imminent and a State's election machinery is already in progress." *Id.* (emphasis added).

The machinery for the 1982 elections in New York State is not yet in full operation and the primary elections are six months in the future. Furthermore, the political process does not commence until June 22. *Cf. Wells v. Rockefeller,* 394 U.S. 542, 547, 89 S.Ct. 1234, 1237, 22 L.Ed.2d 535 (1969) (where the primary election was only three months away, the court held that "we cannot say there was error in permitting the [1968] election to proceed under the plan despite its constitutional infirmities");

*Klahr v. Williams,* 313 F.Supp. 148, 152 (D.Ariz.1970), *aff'd sub nom. Ely v. Klahr,* 403 U.S. 108, 91 S.Ct. 1803, 29 L.Ed.2d 352 (1971) (the court allowed elections to be held under the old plan where nominating petitions had already been circulated and had to be filed within seven weeks of the court's decision); *Swann v. Adams,* 383 U.S. 210, 212, 86 S.Ct. 767, 768, 15 L.Ed.2d 707 (1966) (the Supreme Court ordered a valid apportionment plan "be made effective for the 1966 elections").

Considering these circumstances, it is not unreasonable to insist that the legislature enact, and the Governor sign, a valid reapportionment statute in time for the 1982 elections to proceed as scheduled.

## VII.

Plaintiffs have also contended that the present state legislative and congressional plans violate the 15th Amendment and the Voting Rights Act of 1965 as amended, 42 U.S.C. § 1973 *et seq.* Since on the basis of the "one person, one vote" rule of *Reynolds v. Sims, supra,* and Article 1, § 2, we have directed that reapportionment plans be devised and enacted, we need not reach plaintiffs' other claims.

As previously stated, *supra* at 6–7, an order in accordance with this opinion was filed on March 26, 1982.